1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

FILO FOODS, LLC; BF FOODS, LLC;
ALASKA AIRLINES, INC; and THE
WASHINGTON RESTAURANT
ASSOCIATION

No.

11

Plaintiffs,

**NOTICE OF REMOVAL**

12

13

v.

14

15

THE CITY OF SEATAC; KRISTINA GREGG,
CITY OF SEATAC CITY CLERK, in her
official capacity; and the PORT OF SEATTLE

16

Defendants.

17

SEATAC COMMITTEE FOR GOOD JOBS,

18

Intervenors.

19

20

21

TO:          Clerk of the Court;

22

AND TO:      Harry J. F. Korrell, Attorney for Plaintiffs Alaska Airlines, Inc. and
             Washington Restaurant Association;

23

24

             Cecilia Cordova, Attorney for Plaintiffs Filo Foods, LLC and BF Foods, LLC;
             and

25

             Wayne Tanaka, Mary Mirante Bartolo, and Mark Johnsen, Attorneys for
             Defendants City of SeaTac and Kristina Gregg.

NOTICE OF REMOVAL - 1
Case No.

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

SeaTac Committee for Good Jobs ("Defendant-Intervenor" or "the Committee") files this Notice of Removal of an action presently pending in King County Superior Court, Washington State, to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1441, and states that removal is proper for the following reasons:

## I.       BACKGROUND AND PROCEDURAL REQUISITES FOR REMOVAL.

1.       Members of the SeaTac Committee for Good Jobs drafted an initiative establishing minimum employment standards for transportation and hospitality workers in the City of SeaTac. They collected signatures in order to present the initiative ("the Good Jobs Initiative" or "the Initiative") to the SeaTac City Council for eventual inclusion on the November 2013 ballot.

2.       The Good Jobs Initiative concerns labor standards for certain employers. The Initiative's formal title is "Ordinance Setting Minimum Employment Standards for Hospitality and Transportation Industry Employers." Among other things, it would require certain hospitality and transportation employers to pay specified employees an hourly minimum wage of $15.00, adjusted annually for inflation; pay for safe and sick leave; require tips retention by workers who performed the services; and for employers to offer additional straight-time hours of employment to existing employees before hiring from outside.

3.       The Good Jobs Initiative's sponsors submitted the signatures they collected to the City of SeaTac for consideration by the City Counsel. The City sent the signatures to King County Elections for review, as required under SeaTac Municipal Code section 1.10.140. On June 20, 2013, King County Elections finished its review of the signatures submitted by residents of SeaTac, and issued a finding of sufficiency for the signatures

NOTICE OF REMOVAL - 2
Case No.

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

reviewed. The City Clerk's office issued its own certificate of sufficiency with regard to the petition on June 28, 2013.

4.      On July 8, 2013 Plaintiffs Alaska Airlines, Inc. ("Alaska"), Washington Restaurant Association, Filo Foods, LLC and BF Foods, LLC (collectively, "Plaintiffs") filed an "Application for Writs of Review, Mandate, and Prohibition" and "Complaint for Declaratory and Injunctive Relief" in King County Superior Court in Kent, Washington.  The case is entitled *Filo Foods, LLC, et al. v. The City of SeaTac, et al.,* Case No. 13-2-25352-6, a true and correct copy of the Application and Complaint is attached hereto as **Attachment 1**. In seeking various writs and pleading declaratory and injunctive relief, Plaintiffs asserted a wide swath of state claims in a two-part pleading intended to achieve two exclusive and discrete ends: a) to prevent the Good Jobs Initiative from ever reaching the SeaTac City Council for a vote and b) to prevent the Good Jobs Initiative from ever reaching the voters of the City of SeaTac for a vote.

5.      Because the Good Jobs Initiative had, as of that date, not yet been passed into law by the voters of the City of SeaTac, nothing in the "Application for Writs of Review, Mandate, and Prohibition" and "Complaint for Declaratory and Injunctive Relief" sought any injunctive relief seeking to prevent the initiative from going into effect once enacted into law.

6.      On July 18, 2013, after becoming aware of the pending action, the Committee moved to intervene as a Defendant, which request was granted by King County Superior Court Judge Andrea Darvas on July 19, 2013.  The Committee has, since that time, been a Defendant-Intervenor in the action.

NOTICE OF REMOVAL - 3
Case No.

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

7.     On July 23, 2013, the SeaTac City Council voted to place the Good Jobs Initiative before the voters of SeaTac on the November 5, 2013 ballot.

8.     On August 26, 2013, Judge Darvas granted Plaintiffs' Motion and Application for Writs of Review, Mandate and Prohibition on the basis that there were an insufficient number of valid signatures to satisfy RCW 35A.01.040(7).  Judge Darvas's Order held that the Good Jobs Initiative was not supported by the required number of valid signatures of registered voters and ordered, in part, that the City and the Clerk were prohibited from sending the initiative measure to King County for inclusion on the November 5, 2013 ballot.

9.     On September 6, 2013, the Washington State Court of Appeals granted discretionary review, reversed Judge Darvas's rulings, vacated Judge Darvas's August 26, 2013, order, and quashed all writs issued pursuant to that order.

10.    Plaintiffs sought discretionary review of the Washington State Court of Appeals' ruling on September 9, 2013.   On September 10, 2013, the Washington Supreme Court denied this request.

11.    On October 25, 2013, Plaintiffs filed a "Motion for Leave to Amend Complaint for Declaratory and Injunctive Relief" ("Amended Complaint").

12.    On November 5, 2013, the voters of the City of SeaTac appear to have passed the Good Jobs Initiative into law. If the election result is certified by King County on November 26, 2013, the law will become effective January 1, 2014.

13.    On November 5, 2013, Judge Darvas granted Plaintiffs' Motion for Leave to Amend Complaint for Declaratory and Injunctive Relief.  On November 8, 2013, Plaintiffs

NOTICE OF REMOVAL - 4
Case No.

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

filed their Amended Complaint, a true and correct copy of which is attached hereto as **Attachment 2**, per Local Rule 101(b)**.**  This Notice of Removal timely follows.

14.    Venue properly lies in this district under 28 U.S.C. § 1391 because Plaintiffs' claims allegedly arose in King County, Washington.

15.    Defendants City and Clerk have consented to removal.  On information and belief, Defendant Port of Seattle has not been served, so its consent is not required.  On information and belief, the Port of Seattle may withhold its consent to removal.  However, Port of Seattle is a nominal defendant against whom no actual relief is sought and whose consent is therefore not required.  *See Hewitt v. Stanton*, 798 F.2d 1230, 1233 (9th Cir. 1986); *Evergreen School Dist. v. N.F.*, 393 F.Supp.2d 1070, 1073-74 (W.D.Wash. 2005) (Burgess, J.) (finding that where plaintiff did not seek any relief in its state court action against nonconsenting state agencies, and there did not appear to be any grounds for the imposition of liability against them, "the state agencies are not proper defendants under § 1446, but rather are stakeholders to this action and as such, at best are merely nominal parties to the proceeding").

16.    Written notice of the filing of this Notice of Removal will be served on Plaintiffs, and a copy of the Notice will be filed with the Clerk of the King County Superior Court, as required by 28 U.S.C. § 1446(d).

17.    Plaintiffs' Amended Complaint is removable because it includes a claim for direct injunctive relief against post-enactment enforcement based on federal law.  *See,* Amended Complaint, page 36, ¶ 6(a) (seeking an injunction "prohibiting the City of SeaTac or any other party (or anyone acting in concert with a party) from taking any steps to enforce

NOTICE OF REMOVAL - 5
Case No.

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

or apply the provisions of the Ordinance"). This claim creates federal subject-matter jurisdiction. *Independent Training and Apprenticeship Program v. California Dept. of Indus. Relations*, 730 F.3d 1024, 1031 (9th Cir. 2013); *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1414 (9th Cir. 1990); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983).

18.     This Notice of Removal is timely because prior to the passage of the Good Jobs Initiative by the voters of the City of SeaTac, and prior to the filing of the Amended Complaint containing a claim for direct injunctive relief against post-enactment enforcement based on federal law, federal subject-matter jurisdiction did not exist.   There is no federal removal jurisdiction over state-court pre-election challenges to proposed ballot measures, even where the challenge is based in part on federal law, because the dispute is not yet ripe and therefore no Article III standing exists. *Nevada Restaurant Ass'n v. Pest Committee*, 2008 WL 8225546 *2-3 (D.Nev. 2008) (remanding the case because "the issue of the proposal's constitutionality is not yet ripe for a decision. Courts avoid hypothetical questions and will not make a declaration of unconstitutionality when it is not necessary"). *See also, New Progressive Party v. Hernandez Colon*, 779 F. Supp. 646, 655 (D.P.R. 1991) ("If plaintiffs are saying that the approval in the referendum [will violate federal law], their claim is not ripe for decision. Under Article III of the Constitution, federal courts can only adjudicate cases that present concrete legal issues"); *Ajax Gaming Venture, LLC v. Brown*, 2006 WL 2302192 *3 (D.R.I. 2006) (no Article III jurisdiction to issue advisory opinion about pre-enactment ballot question).

NOTICE OF REMOVAL - 6
Case No.

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

21.     Because this Notice of Removal is filed within thirty days of the date of service of the Amended Complaint, and the earlier version of the Complaint did not state a justiciable federal claim, this Notice of Removal is timely under 28 U.S.C. § 1446(b). *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1223-24 (9th Cir. 2009); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir.2005).

22.     Alternatively, this Notice of Removal is timely because it falls within the judicially-created revival exception to the 30-day removal requirement and the Notice of Removal is therefore timely.

23.     The revival exception to § 1446(b) provides that "a lapsed right to remove an initially removable case within thirty days is restored when the complaint is amended so substantially as to alter the character of the action and constitute essentially a new lawsuit." *Johnson v. Heublein Inc.*, 227 F.3d 236, 241-43 (5th Cir. 2000).   Where the amended complaint so changes the nature of an action as to constitute "substantially a new suit" or "an entirely new and different suit" a defendant is given additional time to remove the case. *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n,* 668 F.2d 962, 965 (7th Cir. 1982); *Ramos-Arrizon v. JP Morgan Chase Bank, N.A.,* 12CV609 JLS WMC, 2012 WL 3762455 (S.D. Cal. Aug. 28, 2012) (noting that courts generally recognize the revival exception when the change effectively constitutes a new suit).

25.     The original action was of a purely procedural nature, seeking to prevent the City and the City Clerk from taking action related to having the Good Jobs Initiative placed on the November 5, 2013, ballot, on the theory that the Good Jobs Initiative exceeds the City's initiative

NOTICE OF REMOVAL - 7
Case No.

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

1
2

power.  One basis for this argument was that the City is precluded from enacting laws via initiative that conflict with or are preempted by state or federal law.

3
4
5
6
7
8
9
10
11
12
13
14
15

26.     In addition to adding the Port of Seattle as a new Defendant and adding new state and federal claims, the Amended Complaint fundamentally changes the nature of the action from exclusively an attempt to prevent the measure from reaching the City Council or the November 5, 2013 ballot, to an effort to obtain a ruling declaring the Good Jobs Initiative to be intrinsically invalid and, on that basis, to issue an "injunction prohibiting the City of SeaTac or any other party (or anyone acting in concert with a party) from taking any steps to enforce or apply the provisions of the Ordinance, including but not limited to adopting auditing procedures, investigating alleged violations, or initiating legal or other action pending final resolution of this action." Attachment 2, pp. 35-36, Prayer For Relief, ¶¶ 4, 6a. In short, Plaintiffs have essentially initiated a new lawsuit the sole and exclusive purpose of which is to prevent the law from going into effect, from being applied and from being enforced.[1]

16
17

27.     In this circumstance, the amended complaint so changes the nature of Plaintiffs' action as to constitute substantially a new suit which revives the Defendants' right to remove.

18
19
20

28.     <u>Intradistrict Assignment</u>. The Committee is choosing to remove this action to the Seattle Division in accordance with LCR 3(d), because the claim arose in King County and all defendants have their principal places of business in King County.

21
22
23
24
25

---

[1] Although a declaratory ruling that the Ordinance is beyond the scope of the City's initiative power was requested in the original complaint, this relief was tied exclusively to Plaintiffs' efforts, pursuant to state law, to prevent the measure from reaching a vote.

NOTICE OF REMOVAL - 8
Case No.

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

WHEREFORE, Defendant gives notice that the civil action pending against it in King County Superior Court has been removed from that court to the United States District Court for the Western District of Washington.

DATED this 8th day of November, 2013.

s/Dmitri Iglitzin
Dmitri Iglitzin WSBA No. 17673
s/Jennifer Robbins
Jennifer Robbins, WSBA No. 40861
SCHWERIN CAMPBELL BARNARD IGLITZIN & LAVITT LLP
18 West Mercer Street, Suite 400
Seattle, WA 98119
(206) 285-2828
(206) 378-4132
iglitzin@workerlaw.com
robbins@workerlaw.com

NOTICE OF REMOVAL - 9
Case No.

LAW OFFICES OF
SCHWERIN CAMPBELL
BARNARD IGLITZIN & LAVITT, LLP
18 WEST MERCER STREET SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

# Attachment 1

1

2

3

4

5

6

7

SUPERIOR COURT OF THE STATE OF WASHINGTON
KING COUNTY

8  FILO FOODS, LLC; BF FOODS, LLC;         )
   ALASKA AIRLINES, INC; and THE           )
9  WASHINGTON RESTAURANT                    )    No.
   ASSOCIATION                              )
10                                          )    APPLICATION FOR WRITS OF
                          Plaintiffs,       )    REVIEW, MANDATE, AND
11                                          )    PROHIBITION
            v.                              )
12                                          )    and
   THE CITY OF SEATAC and KRISTINA          )
13 GREGG, CITY OF SEATAC CITY CLERK, in     )    COMPLAINT FOR
   her official capacity                    )    DECLARATORY AND
14                                          )    INJUNCTIVE RELIEF
                          Defendants.       )
15                                          )
                                            )
16 _____ )

17          Plaintiffs, by and through their undersigned counsel, allege the following:

18                          **I.      INTRODUCTION**

19          On or about June 5, 2013, the SeaTac Committee for Good Jobs filed an initiative

20 petition and proposed ordinance entitled "Ordinance Setting Minimum Standards For Hospitality

21 and Transportation Industry Employers" (the "Ordinance") with the City of SeaTac City Clerk's

22 office.[1]  The Ordinance, if adopted, would amend the SeaTac Municipal Code ("SMC") to

23 impose a series of unprecedented requirements and restrictions on certain private employers in

_____
[1] A true and correct copy of the proposed Ordinance filed with the City of SeaTac City Clerk's
office is attached hereto as Exhibit A.

COMPLAINT - 1
DWT 22218343v7 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 11
    Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1   the hospitality and transportation industries.  Among other things, the Ordinance would impose

2   the highest minimum wage in the country (increasing the minimum wage in the city, but only for

3   certain industries, by 68%; regulate how tips are shared among employees; restrict employers'

4   ability to hire additional part-time workers; impose retention and successorship obligations that

5   restrict employers' right to select their own employees; impose costly sick and safe time

6   obligations on employers; and subject employees' confidential medical information to public

7   review.  Moreover, the Ordinance can be enforced by any person or entity, without regard for

8   whether they have been harmed by a violation or are even employed or doing business in the

9   City of SeaTac.

10          In its processing of the proposed Ordinance, the City of SeaTac has failed to follow the

11  procedures required for the processing of initiatives set out in the SeaTac municipal code, and

12  the Ordinance exceeds the power of the City of SeaTac to adopt legislation, by initiative or

13  otherwise.

14          Specifically,

15          (a)      the number of valid signatures on the initiative petition is not sufficient to

16                   advance the measure to the City Council for action or for placement on the

17                   November ballot;

18          (b)      the City of SeaTac did not perform a review of the legality and sufficiency of the

19                   title and text of the Ordinance, as required by SMC 1.10.140, prior to issuing a

20                   Certificate of Sufficiency regarding the initiative petition (thus potentially

21                   misleading the City Council and voters regarding the measure's legality);

22          (c)      the Ordinance exceeds the scope of the City of SeaTac's initiative power and

23                   legislative authority.  The Ordinance addresses multiple subjects, and those

COMPLAINT - 2
DWT 22218343v7 0017572-000176

Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    subjects are not reflected in the title; the measure conflicts with state and federal

2    law; and many provisions purport to regulate aspects of the employment

3    relationship that are preempted by federal law; and

4    (d)    the City of SeaTac failed to create a Petition Review Board to consider and act

5    upon any evidence or reports of matters relating to initiative petitions which the

6    Board may determine warrant investigation or legal action.

7    **In Part One on this suit**, Plaintiffs seek writs, pursuant to SMC 1.10.210, reversing the

8    City Clerk's decision to issue a Certificate of Sufficiency; prohibiting further action until the

9    City Clerk reviews the legality and sufficiency of the title and text of the Ordinance as required;

10   and mandating that the City conduct the review required by SMC 1.10.140.

11   **In Part Two of this suit**, Plaintiffs seek a judgment declaring that the proposed

12   Ordinance exceeds the scope of City of SeaTac's initiative power and legislative authority and a

13   Writ of Prohibition or an injunction prohibiting the City of SeaTac or the City Clerk from

14   forwarding the proposed Ordinance to the City Council for action and from taking any other

15   action to forward the Ordinance to King County for placement on a ballot for an election.

16   ## II.    PARTIES, JURISDICTION, AND VENUE

17   1.    Plaintiffs Filo Foods LLC and BF Foods LLC.  Plaintiffs Filo Foods LLC ("Filo")

18   and BF Foods LLC ("BF Foods") are Washington limited liability corporations located in the

19   City of SeaTac.  Filo and BF Foods are small food and beverage concessionaires operating out

20   of SeaTac Airport, employing ten or more nonmanagerial, nonsupervisory employees.   If the

21   proposed Ordinance is adopted, Filo and BF Foods would be directly affected by the proposed

22   Ordinance in several ways, including the following:  (A) If Filo or BF Foods seek to operate in

23   a new location, they would be forced to hire the employees of the business which had

previously operated out of that location.  If that happened, then their current employees could

COMPLAINT - 3
DWT 22218343v7 0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  lose their jobs. (B) The employees of Filo Foods and BF Foods have not chosen to be

2  represented by a union, but the proposed ordinance improperly encourages unionization and

3  collective bargaining.  (C) Filo's and BF Foods' labor costs would increase dramatically.  (D)

4  Filo and BF Foods, like other concessionaires operating out of SeaTac Airport, have a

5  contractual obligation to offer "street pricing."  Street pricing prohibits Filo and BF Foods from

6  passing increased labor costs to its customers, and Filo and BF Foods could be forced to take

7  steps, damaging to its business, in order to keep expenses from exceeding revenues (such as

8  laying off employees or cutting back on the quality and quantity they offer customers).  (E) It

9  is industry practice for employees to engage in tip pooling, allowing cooks, dishwashers,

10  runners, expeditors, hostesses, bartenders, and others to participate in tips as part of the tip

11  system.  If the proposed Ordinance is passed, then some of Filo's and BF Foods' employees

12  would lose tips as part of their compensation.

13  　　　　2.　　Plaintiff Alaska Airlines, Inc.  Plaintiff Alaska Airlines, Inc. ("Alaska") is an

14  Alaska corporation with its headquarters in the City of SeaTac.  Alaska provides passenger air

15  transportation and related services, by itself and through contractors, at the Seattle-Tacoma

16  International Airport (hereinafter, "SeaTac Airport").  Alaska would be directly affected by the

17  proposed Ordinance in several ways, including the following:  (A) In providing services to

18  Alaska and its passengers, Alaska's four major contractors employ in excess of 500 full-time

19  employees in those efforts.  If the proposed Ordinance were adopted and applied to Alaska's

20  contractors, their labor costs would increase dramatically.  If that happened, because of how

21  pricing is determined in the agreements with these contractors, the prices charged by the

22  contractors to Alaska would increase dramatically as well.  Alaska would have to pass some or

23  all of that price increase on to its customers, and the market for air transportation services is

COMPLAINT - 4
DWT 22218343v7 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 14
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

price sensitive.  (B)  It is a customary practice in the industry for airlines to provide some services to each other.  The measure purports to exempt certified air carriers performing services such as passenger check-in, baggage check, wheelchair escort, baggage handling, and other support services "for itself," but it does not exempt air carriers performing such services for other airlines.  Any air carriers, including Alaska, who participate in this customary practice would be directly affected by the proposed Ordinance.  (C)  By drastically increasing the labor costs to the hospitality and transportation industries in SeaTac, the proposed Ordinance would make hotel rooms, rental cars, and parking more expensive, and this will make Seattle a more expensive destination and transportation hub.  A large portion of Alaska's business comes from travelers flying to Seattle, and if Seattle becomes a more expensive destination, Alaska's business would suffer.

3.   <u>Plaintiff Restaurant Association of Washington</u>.  Plaintiff Restaurant Association of Washington is a trade association representing and advocating the interests of the restaurant industry in Washington.  Many of its members will be adversely affected by the proposed Ordinance, including the ways it would affect Plaintiffs Filo Foods, LLC and BF Foods, LLC.

4.   <u>Serious Public Importance</u>.  In addition to causing the harms suffered or likely to be suffered by the Plaintiffs herein, the proposed Ordinance and its legality are matters of serious public importance and immediately affect substantial segments of the population.  The disposition of this matter will have a direct bearing on commerce, finance, labor, and industry.

5.   <u>Defendant City of SeaTac</u>.  Defendant City of SeaTac (the "City") is a non-charter code city and a municipal corporation organized and existing under the laws of the State of Washington and does business in King County, Washington.

COMPLAINT - 5
DWT 22218343v7 0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

6.     <u>Defendant City of Sea Tac City Clerk</u>.  Defendant Kristina Gregg is the City of SeaTac City Clerk ("City Clerk").  Plaintiffs name the defendant in her official capacity only. This Court has personal jurisdiction over the City Clerk because the City Clerk maintains offices and transacts business in the State of Washington.

7.     <u>Venue</u>.  Venue is proper in King County pursuant to RCW 4.12.020.  Venue is also proper because defendants do business in King County.

8.     <u>Jurisdiction to Issue Writs</u>.  This Court has jurisdiction to issue writs of review, mandate, and/or prohibition pursuant to SMC 1.10.210 and RCW 7.16 *et* seq..

9.     <u>Jurisdiction to Provide Declaratory and Injunctive Relief</u>.  This Court has jurisdiction over this controversy pursuant to RCW 7.24 because Plaintiffs seek a determination of the legality of the Ordinance, including whether enacting the Ordinance is within the City's initiative power.  This Court also has jurisdiction over this controversy pursuant to RCW 7.16 and 7.40 because Plaintiffs seek a Writ of Prohibition or an injunction preventing placement of the Ordinance on the November 2013 ballot.

## III.   THE PROPOSED ORDINANCE

10.     On or about June 5, 2013, SeaTac Committee for Good Jobs filed an initiative petition and proposed ordinance entitled "Ordinance Setting Minimum Employment Standards For Hospitality and Transportation Industry Employers" with the City Clerk's office.

11.     The Ordinance seeks to amend the SeaTac Municipal Code to regulate some private employers in the hospitality and transportation industries.  The measure contains numerous provisions, addressing a variety of topics, among them the following:

**<u>Minimum Wage.</u>**

a.   Mandates a minimum wage of $15 per hour, but only for some employers in the Hospitality and Transportation Industries.

COMPLAINT - 6
DWT 22218343v7 0017572-000176

Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

b.  Increases the minimum wage each year.

c.  Excludes tips, gratuities, service charges, and commissions from the minimum wage.

**Sick Leave.**

a.  Mandates the employers in the Hospitality and Transportation Industry provide employees with immediate entitlement to accrue and to use one hour of paid sick and safe time for every 40 hours worked.

b.  Requires that employers pay employees a lump sum payment at the end of the calendar year equivalent to the compensation due for any accrued but unused sick and safe time.

c.  Regulates the reasons why an employee is entitled to sick and safe time.

d.  Does not allow employers to documentation to support a request for or safe sick time.

e.  Requires that employers retain records documenting sick and safe time, including medical certifications, re-certifications, and medical histories of employees and their family members and make such records available for inspection by the SeaTac City Manager.

**Restricting Employment.**

a.  Interferes with the ability of employers to hire additional workers and subcontractors by requiring that employers offer extra hours of work to qualified part time employees before hiring additional part-time employees and subcontractors.

**Tip Pooling.**

a.  Requires that any service charge or tips be retained by or paid to the employee who performs the services for which the tip or service charge is collected.

b.  Requires that tips and service charges be pooled and distributed among the workers who perform services.

c.  Prohibits the distribution of tips to employees who do not directly provide the services at issue, regardless of an employer's alternative legal tip pooling system.

**Retention Of Employees.**

a.  Requires that an employer give notice to all employees 60-days prior to the termination of a contract. The proposed ordinance does not define what kind of contract must be terminated to trigger this requirement.

b.  Interferes with the ability of parties to contract for the provision of services and employers' ability to arrange its workforce by requiring that a successor employer

COMPLAINT - 7
DWT 22218343v7 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 17
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

retain the employees of the predecessor employer, before hiring additional employees or transferring workers from elsewhere, regardless of the successor employer's needs or desire to retain its own employees.

c.   Requires that employees of a predecessor employer be employed for no less than 90-days once hired, regardless of the successor employer's needs.

d.   Requires that employees of a predecessor employer be offered positions according to seniority, regardless of the successor employer's policies, practices, or needs.

**Recordkeeping Requirements.**

a.   Invades the privacy of employees by requiring that employers maintain and make available for inspection numerous personnel records.

b.   Imposes liability on employers for substantive violations of the ordinance based solely on a lack of records.

**Enforcement.**

a.   Abrogates State law standing requirements by allowing any person (defined to include associations, corporations, and other "entities") to bring a complaint against an employer in King County Superior Court regardless of whether or not the suing "person" is injured.

b.   Requires the City of SeaTac to adopt auditing procedures sufficient to monitor and ensure compliance, investigate complaints, and initiate legal action to remedy violations.

**Protected Activity.**

a.   Prohibits retaliation against employees who engage in certain protected activity.

b.   Defines protected activity to include communicating with a union about alleged employer violations of the Ordinance.

**Waiver.**

a.   The provisions of the Ordinance apply to all covered employers, and individual employees cannot agree to waive any of its provision, but

b.   The burdens of the Ordinance may be avoided if the covered employer enters a "bona fide" collective bargaining agreement with a union that includes a waiver of the provisions.

COMPLAINT - 8
DWT 22218343v7 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 18
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

**Application.**

The Ordinance applies to employers that operate or provide the following services within the City of SeaTac:

a. Transportation services including, but not limited to, curbside check-in and baggage handling, cargo handling, aircraft cleaning and washing, and aircraft fueling.

b. Any janitorial and custodial service, facility maintenance service, security service, or customer service performed in a facility where transportation services are also performed, regardless of whether these secondary services are related to the transportation services.

c. Rental car, shuttle transportation, and parking lot management services.

d. Hotels with one hundred or more guest rooms.

e. Foodservice or retail provided in public facilities, corporate cafeterias, conference centers and meeting areas, and hotels.

## IV.    PART ONE:  APPLICATION FOR WRITS PURSUANT TO SEATAC MUNICIPAL CODE 1.100.210 AND RCW 7.16

### A.    Limits on the Initiative Power in Municipalities.

12.    RCW 35A.11.080 – RCW 35A.11.100 allows non-charter code cities such as the City of SeaTac to provide for direct legislation by the people through initiatives.  RCW 35A.11.100 allows such cities to exercise its initiative powers generally "in the manner set forth for the commission form of government in RCW 35.17.240 through 35.17.360".  This municipal initiative power, however,  is limited.   The "subject in title" and "single subject" rules that apply to state-wide initiatives also apply to SeaTac initiatives.  RCW 35A.12.130; SMC 1.10.080.  These rules ensure that legislators and voters both know what they are voting for or against and that they are not forced to adopt legislation on one topic that they do not approve in order to pass legislation on another topic that they do support.  In addition, a municipality such as the City of SeaTac does not have the power to adopt legislation by initiative that conflicts with the United States or Washington State constitutions, or with other state or federal laws. SMC 1.10.140; Wash. Const. art. XI, § 10.  Likewise, a municipality does

COMPLAINT - 9
DWT 22218343v7 0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   not have the power to adopt legislation by initiative that purports to regulate issues preempted

2   by federal law.  *City of Seattle v. Burlington N. R.R.*, 145 Wn.2d 661 (2002).

3   13.   Legislation proposed by initiative often has not had the benefit of research,

4   negotiation, compromise, and other checks and balances of the legislative process and, as a

5   result, can reflect a myopic or one-sided view of an issue or problem.  Because an initiative

6   may not have been vetted by legislative staff and counsel, legislation proposed by initiative

7   often turns out to be in conflict with or preempted by state or federal legislation.  *Wash.*

8   *Citizens Action of Wash. v. State*, 162 Wn.2d 142 (2007); *City of Sequim v. Malkasian,* 157

9   Wn.2d 251 (2006); *Amalgamated Transit v. State*, 142 Wn.2d 183 (2000).

10   14.   The SeaTac municipal code imposes safeguards to reduce some of the risks of

11   legislating by initiative.  SMC 1.10.140 requires that before an ordinance proposed by initiative

12   may be passed to the City Council for either adoption or placement on the ballot at the next

13   election, the City Clerk, in consultation with the City Attorney, must review and approve the

14   "legality" of the "title and text" of the proposed measure either before initiative sponsors begin

15   collecting signatures or, if such prior approval was not provided, then prior to forwarding the

16   proposed Ordinance to the City Council for action (either adopting it or putting it on the ballot

17   at the next election).  SMC 1.10.110 requires that a proposed Ordinance be supported by

18   petitions containing valid signatures from the number of registered voters of the City equal to

19   at least fifteen percent (15%) of the total number of names of persons listed as registered voters

20   within the City on the day of the last preceding City general election. SMC 1.10.140 sets out

21   the criteria for determining whether signatures are valid.

22   15.   With respect to the proposed Ordinance, the City Clerk has issued a Certificate of

23   Sufficiency and has announced her intention to present the measure to the City Council on

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

July 8, 2013.  The City Clerk issued this certificate based on an insufficient number of valid signatures and without reviewing the legality of the measure as required by SMC 1.10.140. Absent immediate action by the Court, the City of SeaTac will be allowed to act in excess of its initiative power and legislative authority by placing an unlawful measure on the November 5, 2013 ballot.

**B.      Allegations**

          **1.      The City Issued a Certificate of Sufficiency Without Reviewing the Legality and Sufficiency of the Title and Text of the Ordinance**

16.      RCW 35A.11.080 – RCW 35A.11.100 and SMC 1.10.040 grant the voters of the City the powers of initiative and referendum subject to the limitations of state law, the general law, and the City's initiative and referendum procedure.

17.      SMC 1.10.100 requires that a sample petition be submitted to the City Clerk before an initiative can be distributed to the public for the solicitation of signatures.

18.      Pursuant to SMC 1.10.100(C), the sponsor of an initiative petition may request that the City Clerk, with advice of the City Attorney, review, require changes, and/or approve the content and format of the petition and the title and text of the proposed ordinance prior to obtaining signatures.  If the sponsor does not request review, the City Clerk, with advice of the City Attorney, shall determine the legality and sufficiency of the title and text of the proposed ordinance before the petition is referred to City Council for adoption or referral to the King County Department of Elections. SMC 1.10.140.  Thus, at some point prior to referring any ordinance proposed by petition to the City Council, the City Clerk must review the legality of the title, content, and text of the measure.

19.      On or about April 26, 2013, SeaTac Committee for Good Jobs and SeaTac residents Mahad Aden, Joseph Diallo, Patricia L. Reid, and Chris Smith (collectively, the

COMPLAINT - 11
DWT 22218343v7 0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   "Petition Sponsors") submitted a sample petition to the SeaTac City Clerk.  The Petition

2   Sponsors requested, pursuant to SMC 1.10.100(c), that the City Clerk, with the advice of the

3   City Attorney, review the content and format of the petition, including the title and text of the

4   proposed ordinance.

5        20.   Following their submission of the Ordinance, the Petition Sponsors consulted

6   with the City Attorney regarding the format of the Ordinance so that, if passed, it could easily

7   be codified in the Municipal Code.

8        21.   On or about May 1, 2013, the Petition Sponsors resubmitted a revised version of

9   the sample petition to the SeaTac City Clerk.  The revised version of the sample petition was

10  similar to the original submission but with some minor corrections.

11       22.   On or about May 1, 2013, the City Clerk approved the format of the petition.

12  Neither the City Clerk nor the City Attorney made any determination with regard to the legality

13  and sufficiency of the title, content, or text of the proposed ordinance prior to the petition being

14  distributed to the public for the solicitation of signatures.

15       23.   On or about May 9, 2013, the City's Legal Department issued an opinion that the

16  subject matter of the Ordinance was an area that could be regulated by the City.  The opinion

17  was issued in response to a request by City Councilmember Pam Fernald.  Although the

18  opinion found that the City could regulate "wages, hours, and other working conditions," the

19  opinion specifically addressed only the Ordinance's minimum wage and safe and sick time

20  provisions.  The Legal Department did not consider, and the opinion did not address, any other

21  aspects of the Ordinance's legality.

22       24.   On or about June 19, 2013, the City Clerk issued a memorandum stating that she

23  had determined the legality and the sufficiency of the title and text of the proposed Ordinance.

COMPLAINT - 12
DWT 22218343v7 0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

The City Clerk determined only that "The proposed Ordinance is a subject that can be submitted to the City via the Initiative process." The City Clerk did not make any other determinations regarding the legality and sufficiency of the title and text of the Ordinance.

25.   SMC 1.10.170 creates a Petition Review Board (consisting of the Mayor, City Manager, and Police Chief) to review any matters relating to initiative petitions which warrant investigation, report to the City Council, or legal action. The Petition Review Board has never met to consider the proposed Ordinance.

26.   On or about June 21, 2013, Plaintiff Alaska, along with the Southwest King County Chamber of Commerce and the Association of Washington Business, sent a letter to the City Clerk asking, among other things, whether she had considered various issues with regard to the legality and sufficiency of the title and text of the Ordinance and if not, when she intended to do so. Alaska further requested that the City Clerk convene a Petition Review Board to consider the Ordinance before further processing the proposed ordinance. The City Clerk did not respond to Alaska's letter or request.

27.   On July 2, 2013, Plaintiffs Alaska, Filo, and BF Foods sent a letter to the City Clerk petitioning the City of SeaTac to convene a Petition Review Board to consider the legality and sufficiency of the title, text, and content of the proposed Ordinance. Other than acknowledging receipt of this letter, the City Clerk has not responded to this request by Plaintiff Alaska.

### 2.   The City Issued a Certificate of Sufficiency Even Though the Signatures on the Initiative Petition Are Not Sufficient

28.   On or about June 5, 2013, SeaTac Committee for Good Jobs filed with the City Clerk copies of the petition in support of the Ordinance signed by 2,506 individuals. The City Clerk forwarded the copies of the petition to the Superintendent of Elections of the King

COMPLAINT - 13
DWT 22218343v7 0017572-000176

Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    County Department of Elections to check compliance with the signature requirements of SMC

2    1.10.140.

3        29.    The Superintendent of Elections of the King County Department of Elections, as

4    ex officio supervisor of city elections, examined signatures on the petition.

5        30.    On or about June 20, 2013, the Superintendent of Elections of the King County

6    Department of Elections completed verification of the signatures on the petition.  The

7    Superintendent of Elections of the King County Department of Elections "verified" 2,283

8    signatures of the 2,506 signatures submitted with the petition, meaning the County examined

9    those signatures to determine if they should be counted.  Of the 2,283 verified signatures, the

10   Superintendent of Elections of the King County Department of Elections "challenged" 668

11   signatures, meaning it rejected them either because they were not signatures from registered

12   voters living in the City of SeaTac or they failed to satisfy the requirements of SMC 1.10.140.

13   The Superintendent of Elections of the King County Department of Elections determined that

14   the remaining 1,615 signatures were valid signatures from registered voters living in SeaTac.

15   SMC 1.10.110 requires that to qualify for mandatory consideration by the City Council and

16   placement on the ballot at the next election, the petition be signed by 1,536 registered voters.

17       31.    The Superintendent of Elections of the King County Department of  Elections

18   determined that 44 individuals signed the petition multiple times.  SMC 1.10.140 requires that

19   when a person signs a petition two or more times, all signatures, including the original, must be

20   stricken.  King County did not strike (and instead counted) the original signature when a

21   person signed the petition two or more times.  Those 44 original signatures should have been

22   rejected.

23

COMPLAINT - 14
DWT.22218343v7.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 24
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

32.     One hundred thirty six of the signatures that were found sufficient and counted by the Superintendent of Elections of the King County Department of Elections did not include a date as required by law.  SMC 1.10.140 requires that signatures be followed by a date that is not more than six months prior to the date of filing of the petition.  Signatures not followed by a date should have been rejected.  King County did not reject, and instead counted, 136 signatures that did not have dates.

33.     Thirty six of the signatures that were found sufficient and counted by the Superintendent of Elections of the King County Department of Elections plainly were dated by an unknown third party, on an unknown date.  SMC section 1.10.140 requires that signatures that have been altered shall be invalid and shall not be counted.  The Superintendent of Elections of the King County Department of Elections improperly counted these signatures.

34.     Thirty eight of the signatures that were found sufficient and counted by the Superintendent of Elections of the King County Department of Elections appeared on petition pages that did not have a copy of the proposed Ordinance attached to them as required by law.  SMC 1.10.080 requires that a copy of the petition be attached to every single petition signature page.  These 38 signatures should have been rejected.

35.     Twelve signatures did not include an address.  The format of the petition mandated by SMC 1.10.080 requires that each registered voter provide their address when they sign.  The Superintendent of Elections of the King County Department of Elections improperly counted these signatures, and they should have been excluded.

36.     Thus, 266 were found sufficient and counted that should have been rejected by the Superintendent of Elections of the King County Department of Elections.  Because those

COMPLAINT - 15
DWT 22218343v7 0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    signatures were not valid and should have been rejected under SMC1.10.140, the petition is

2    supported only by, at most, 1349 signatures, fewer than the 1,536 required by SMC 1.10.110.

3            37.    On June 20, 2013, the Superintendent of Elections of the King County

4    Department of Elections certified to the City Clerk that the petition was supported by a

5    sufficient number of valid signatures.

6            38.    On June 28, 2013, the City Clerk issued a Certificate of Sufficiency with regard to

7    the petition.  This Certificate of Sufficiency was improperly issued because the petition was

8    not, in fact, supported by a significant number of valid signatures; because the City Clerk failed

9    to conduct the required review of the legality of the measure; and because the Petition Review

10   Board has not yet considered any aspect of the petition, despite requests to do so.

11           39.    The SeaTac City Attorney is scheduled to present the Ordinance to the City

12   Council and answer questions on July 9, 2013, and on July 23, 2013, the City Council is

13   scheduled to vote on whether to adopt the Ordinance.  Pursuant to SMC 1.10.220, if the City

14   Council does not adopt the proposed (and unlawful) ordinance, the City Clerk will forward it to

15   King County for placement on the ballot for the November 5, 2013, election.

16       **C.    Claims For Relief In Part One**

17           40.    In Part One of this Application and Complaint, Plaintiffs seek the issuance of

18   writs pursuant to SMC 1.10.210 and RCW 7.16.

19           41.    <u>Writ of Review</u>.  The determination by the City Clerk that the petition is

20   supported by a sufficient number of valid signatures should be reviewed and reversed.  Before

21   a Certificate of Sufficiency may be issued, the City Clerk was required to determine that the

22   Petition was signed by the number or registered voters of the City equal to at least fifteen

23   percent (15%) of the total number of names of persons listed as registered voters within the

     City on the day of the last preceding City general election.  SMC 1.10.100**.**  The City Clerk

COMPLAINT - 16
DWT.22218343v7.0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

relied on a certification by the Superintendent of Elections of the King County Department of Elections, but as explained above, the Superintendent improperly counted at least 266 signatures that failed to meet the requirements of SMC 1.10.140 and thus should have been rejected.

42.    This court should issue a Writ of Review, pursuant to SMC 1.10.210 and RCW 7.16.040 and reverse the determination that the Petition is supported by the necessary signatures, which determination necessarily underlies the City Clerk's June 28, 2013, Certificate of Sufficiency.

43.    Writ of Prohibition.  The City Clerk has failed to make the required review of the legality and sufficiency of the title, content, and text of the proposed Ordinance.  Any review conducted by the City Clerk so far was limited to the format of the petition and the narrow question of whether the City had the authority, generally, to regulate wages and hours of employees in the City.  The City has thus far ignored a request that the City conduct a proper review of the Ordinance and convene the Petition Review Board created for this purpose by SMC 1.10.170.

44.    This court should issue a Writ of Prohibition, pursuant to SMC 1.10.210 and RCW 7.16.300, forbidding the City and the City Clerk from taking any further action with regard to the Ordinance, including, but not limited to, taking any action necessary to place the proposed Ordinance before the City Council for adoption or taking any action to place the Ordinance on the November 5, 2013 ballot until after the City Clerk undertakes the required review of the legality of the title, text, and content of the proposed Ordinance and then determines: (a) that the title, text, and content of the proposed Ordinance are legal and sufficient and (b) that the petition was validly signed by the required number of registered

COMPLAINT - 17
DWT.22218343v7.0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1   voters (valid signatures not to include signatures that appear without a date or an address,

2   signatures that appear without a date written by the person actually signing, signatures that

3   appear on petitions that did not have a copy of the Ordinance attached, or signatures of persons

4   signing multiple times).

5   45.   <u>Writ of Mandate</u>.  The Court should issue a Writ of Mandate compelling the City

6   and City Clerk to do the following, as required by SMC 1.10.140

7   a.   conduct a review of the sufficiency of the signatures in support of the

8   petition and determine whether the petition is supported by sufficient valid signatures (not

9   including signatures that appear without a date or an address, signatures that appear without a

10  date written by the person actually signing, signatures that appear on petitions that did not have a

11  copy of the Ordinance attached, or signatures of persons signing multiple times);

12  b.   Conduct a review of the legality of the title, text, and content of the

13  proposed Ordinance and then determine whether the title, text, and content of the proposed

14  Ordinance are legal and sufficient;

15  c.   Issue a Certificate of Sufficiency or Certificate of Insufficiency based on

16  this review; and

17  d.   Convene the Petition Review Board to conduct a hearing to determine the

18  legality and sufficiency of the signatures supporting the petition and the title, text, and content of

19  the proposed Ordinance and to issue a Final Certificate of Sufficiency or Final Certificate of

20  Insufficiency.

21  46.   <u>Absence of an Otherwise Plain, Speedy, and Adequate Legal Remedy</u>.  Plaintiffs

22  have no plain, speedy, and adequate remedy by appeal or other legal action.

23

COMPLAINT - 18
DWT 22218343v7 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 28
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

47. Plaintiff Alaska Airlines and others requested that the City Clerk conduct the required review and make a determination as to the legality and sufficiency of the title and text of the proposed Ordinance. The Plaintiffs and others requested the City of SeaTac to convene a Petition Review Board before taking any further action with regard to the Ordinance. Alaska Airlines and others also requested that the City Clerk review the sufficiency of the submitted signatures. The City has thus far not honored these requests.

48. SMC 1.10.210 requires Plaintiffs to apply to this court for the aforementioned writs, and RCW 7.16 gives this court the authority to issue the requested writs. If the requested writs are not granted, the proposed Ordinance will be placed on the ballot without a determination by the City Clerk that the title and text of the proposed Ordinance is legal and without the petition initiating it having been validly signed by the required number of registered voters of the City. No remedy at law would provide any relief, and equitable relief in the form of a permanent injunction may not be available or available quickly enough to provide relief before the proposed ordinance is forwarded to King County for inclusion on the November 5, 2013, ballot.

49. <u>Costs and Fees</u>. The Court should award Plaintiffs' costs of suit, attorneys' fees, and such other additional relief as the court may deem appropriate pursuant to RCW 7.16.260.

**V. PART TWO: COMPLAINT FOR DECLARATORY JUDGMENT AND A WRIT OF PROHIBITION OR INJUNCTION**

50. In this Part Two, Plaintiffs seek a Declaratory Judgment that the proposed Ordinance exceeds SeaTac's initiative power and a Writ of Prohibition or Injunction to prevent the City and City Clerk from taking any action to place the invalid initiative on a ballot for an election.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## A.      Allegations

51.    <u>State Law Authorizes Local Initiatives</u>.  Non-charter code cities such as SeaTac "have all powers possible for a city or town to have under the Constitution of the state, and not specifically denied to code cities by law."  RCW 35.11.020.  A state statute authorizes cities to provide for "direct legislation by the people through the initiative and referendum upon any matter within the scope of the powers, functions, or duties of the city."  RCW 35.22.200. RCW 35A.11.080 – RCW 35A.11.100 expressly authorizes non-charter code cities power to adopt initiative powers.

52.    <u>SeaTac's Municipal Code Authorizes Local Initiatives, Subject To State Law</u>.  In June 1990, the City of SeaTac City Council adopted Ordinance 90-1042 establishing initiative and referendum power for the City.  Ordinance 90-1042 became codified as SeaTac Municipal Code Chapter 1.10.  Section 1.10.040 of the SeaTac Municipal Code ("SMC") grants the voters of the City of SeaTac the powers of initiative and referendum subject to the limitations of State law, the general law, and the City's initiative and referendum procedure.

53.    <u>Local Initiatives Are Limited In Permissible Scope</u>.  Cities have no authority to adopt by initiative any Ordinance that exceeds the City's authority to legislate.  For example, cities may not adopt initiatives that purport to create local laws conflicting with the United States or Washington constitutions or that conflict with other state or federal laws.  Similarly, cities may not adopt initiatives involving powers delegated by the Washington legislature to a city council or other local board, rather than the city itself.  In addition, cities may not adopt initiatives that are administrative, rather than legislative, in nature.

54.    <u>Invalid Initiatives Should Not Appear On The Ballot</u>.  Initiatives that exceed the scope of the initiative power of a city in any manner are invalid and should not be placed on the ballot.

COMPLAINT - 20
DWT 22218343v7 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 30
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

55.   The Ordinance Exceeds The Initiative Power of the City of SeaTac.  The proposed SeaTac Ordinance exceeds the initiative power of the City of SeaTac because the City does not have the authority to enact laws via initiative that violate the "subject in title" and "single subject" rules; that are administrative in nature rather than legislative; or that conflict with or are preempted by federal or state law.

56.   The Ordinance Violates The "Subject in Title" Rule.  The Ordinance exceeds the initiative power of the City of SeaTac because the City does not have the legislative authority to enact a law that violates the "subject in the title" rule.  The "subject in the title" rule requires that the subject of the measure must be expressed in its title.  RCW 35A.12.130; SMC 1.10.080; *see also* Wash. Const. Art. II, Sec.19.  "The purpose of this provision is to ensure legislators and the public are on notice as to what the contents of the bill are. … This requirement has particular importance in the context of initiatives since voters will often make their decision based on the title of the act alone, without ever reading the body of it. …. A title complies with this requirement if it gives notice to voters which would lead to an inquiry into the body of the act or indicates the scope and purpose of the law to an inquiring mind." *Citizens For Wildlife Mgmt. v. State*, 149 Wn.2d 622, 639 (2003).  The title of the proposed Ordinance is "Ordinance Setting Minimum Employment Standards For Hospitality And Transportation Industry Employers."  This title does not give sufficient notice to voters as to the true contents of the proposed Ordinance.

57.   The Ordinance Violates the Single Subject Rule.  The Ordinance exceeds the initiative power of the City of SeaTac because the City does not have the legislative authority to enact a law that violates the requirement that an ordinance contain only one subject which must be clearly expressed in the title.  RCW 35A.12.130; SMC 1.10.080; *see also* Wash.

COMPLAINT - 21
DWT 22218343v7 0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    Const. Art. II, Sec. 19.  The Ordinance exceeds the initiative power because the Ordinance

2    addresses at least seven, if not more, distinct and discreet subjects.  The several subjects

3    contained in the Ordinance do not have "rational unity" as required by state law.  In fact, the

4    many subjects of the Ordinance are typically addressed in separate legislation and enforced by

5    separate regulatory agencies, including some in state government and some in the federal

6    government.

7         58.    The Ordinance Involves Administrative Matters.  To be valid, a measure proposed

8    by initiative must be legislative (and not administrative) and within the municipality's power to

9    act.  An act is considered administrative if it is temporary and special, rather than permanent

10   and general.  The wage rate revisions and reporting requirements in § 7.45.050 (B)-(D) and the

11   requirement of the City Manager to formally request consent in Section 7.45.110 are

12   administrative and not legislative in nature.

13        59.    The Ordinance Conflicts with State Law Because it Purports to Eliminate The

14   Standing Requirement For Proceedings in State Court.  The Ordinance exceeds SeaTac's

15   initiative power because it unconstitutionally does away with Washington's requirements for

16   standing to sue and purports to change state law regarding standing by allowing "any person"

17   (broadly defined to include individuals, partnerships, trusts, associations "or any other legal or

18   commercial entity, whether domestic or foreign") "claiming a violation of this chapter" to

19   "bring an action" to enforce it, regardless of whether the person or entity was actually harmed

20   or threatened with harm.

21        60.    Provisions of the Ordinance Conflict With Or Are Preempted By Federal Labor

22   Law.  Plaintiff Alaska Airlines is a carrier by air covered by the Railway Labor Act, 45 U.S.C §§

23   151-188 ("RLA"), and employs approximately 8000 employees covered by collective bargaining

COMPLAINT - 22
DWT 22218343v7 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 32
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1  agreements with multiple labor unions negotiated under the RLA.  Numerous vendors and

2  contractors covered by the proposed Ordinance perform services at SeaTac Airport for Alaska

3  and other air carriers.  Most of these vendors and contractors are also covered by the RLA.

4  Some of them are covered by the National Labor Relations Act, 29 U.S.C. §§ 151-169

5  ("NLRA").  Whether an employer is covered by the NLRA or the RLA is determined by the

6  National Mediation Board ("NMB") and/or the National Labor Relations Board ("NLRB").

7  These federal agencies have complete and exclusive jurisdiction to address and resolve

8  representation disputes.   "That is to say, at least where representation disputes are concerned, the

9  National Mediation Board has been given complete jurisdiction under the Railway Labor Act,

10  which is coextensive with that of the National Labor Relations Board under the National Labor

11  Relations Act. The jurisdiction of both administrative bodies is exclusive, with no power in the

12  federal district courts to intrude." *AMFA v. United Airlines*, 406 F. Supp. 494 at 506 (1976).  Air

13  carriers who perform services for other air carriers or other third parties and who would, as a

14  result, be covered by the proposed Ordinance are covered by the RLA.

15      61.    SeaTac does not have the authority to adopt by initiative any legislation that

16  conflicts with federal law or that purports to regulate aspects of labor-management relations

17  governed by federal labor law.  Legislation that interferes with the economic weapons

18  available to labor and management in reaching agreements is pre-empted by the NLRA or the

19  RLA, as applicable, because of its interference with the bargaining process.

20      62.    By way of example and without limitation, Section 7.45.090 of the proposed

21  Ordinance ("Prohibiting Retaliation Against Covered Workers For Exercising Their Lawful

22  Rights") purports to make illegal any adverse action by an employer against an employee who

23  communicates with a union about alleged violations of the Ordinance.  Section 7.45.100A

COMPLAINT - 23
DWT 22218343v7 0017572-000176
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    creates remedies for violations of the proposed Ordinance.  The NLRA, regulates the rights of

2    employees to engage in protected concerted activity, such as communicating with each other or

3    with a union about wages, hours, and working conditions (all subjects of the Ordinance), and

4    an employer's ability to respond to such conduct by its employees. The National Labor

5    Relations Board has exclusive jurisdiction to determine if there has been any unlawful

6    retaliation against employees for exercising such rights.  Section 7.45.090 and .100A of the

7    Ordinance thus purport to provide a cause of action and remedies for conduct that arguably

8    constitutes an unfair labor practice under the NLRA.  Employees covered by the RLA have

9    similar protections although the enforcement mechanisms differ.  Such legislation (and any

10   action under the Ordinance to enforce it) is preempted by federal labor law.

11           63.    The Ordinance also would impose obligations on "Predecessor Employers" and

12   "Successor Employers," including with respect to notice to and retention of employees.  By

13   regulating successorship and specifically imposing an obligation on a "successor" to hire

14   "retention employees," the Ordinance requires that employers hire a particular worker or a

15   specific group of workers based on a group characteristic.  Both the NLRA andRLA define,

16   and governs the obligations of, predecessor and successor employers and preempts regulations,

17   such as the Ordinance, that attempt to regulate market forces with regard to labor supply and

18   collective bargaining and in doing so, interfere with the free play of economic forces.

19           64.    The Ordinance interferes with employee and employer rights by coercing

20   employers to recognize unions and enter into collective bargaining agreements and by coercing

21   employees into union membership  Among other things, the proposed Ordinance allows

22   employers to avoid the impermissible requirements imposed by the measure but only by

23   entering a "bona fide" collective bargaining agreement that waives the provisions of the

COMPLAINT - 24
DWT 22218343v7 0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    Ordinance in clear and unambiguous terms.  Individual employees are not allowed to reach

2    agreements to waive the provisions.  The Ordinance thus conflicts with or is preempted by

3    federal labor law because it interferes with employees' and employers' rights under Sections 7

4    and 8 of the NLRA and Section 2, Third, Fourth, and Seventh of the RLA.  *See Metropolitan*

5    *Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 755, 105 S.Ct. 2380, 2397 (1985); <u>American</u>

6    <u>Train Dispatchers v.</u> <u>Denver & Rio Grande Western Railroad Co.,</u> 614 F. Supp. 543 (D.

7    Colorado 1985).

8            65.     Section 7.45.060 of the proposed Ordinance would require the purchasers of

9    covered employers and successors to the agreements of covered employers to hire the

10   employees of the predecessor employer.  This provision is inconsistent with and/or preempted

11   by both the NLRA and the RLA because it has the effect of forcing the new provider or

12   employer to become a successor employer for purposes of federal labor law, with the attendant

13   obligation to recognize and bargain with the union representing the predecessor employer's

14   employees.

15           66.     In addition, Section 7.45.100 of the proposed Ordinance gives to King County

16   Superior Court the responsibility of determining whether there exists a bona fide collective

17   bargaining agreement and whether such an agreement contains a "clear and unambiguous"

18   waiver of the Ordinance's provisions.  Thus, it conflicts with Section 301 of the NLRA, which

19   provides that only the NLRB or courts applying federal law have this authority, and under the

20   RLA, Congress has vested System Boards of Adjustment with the sole and exclusive

21   jurisdiction to construe and interpret collective bargaining agreements.  The RLA creates "a

22   comprehensive framework for the resolution of labor disputes" arising out of the interpretation

23

COMPLAINT - 25
DWT 22218343v7 0017572-000176

Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    of CBAs in these industries.  *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562

2    (1987).

3        67.    <u>The Ordinance Conflicts With The Airline Deregulation Act</u>.  The Ordinance

4    exceeds the initiative power of the City of SeaTac because Section 7.45.040(A) of the

5    Ordinance, requires payment of service charges directly to "Transportation Workers."  That term

6    is defined in the Ordinance to mean any nonmanagerial, nonsupervisory individual employed by

7    a "Transportation Employer," which is defined to include to include a company operating

8    "curbside passenger check-in services; baggage check services, wheelchair escort services, [and]

9    baggage handling. . . ."  And while Section 7.45.010(M) of the Ordinance excludes from its

10   definition of a covered Transportation Employer "a certified air carrier performing services for

11   itself," it does not exempt certified air carriers when they perform the covered transportation

12   support services for other airlines, as is customary in the industry.  Thus certified air carriers

13   would be covered by the proposed Ordinance, at least with respect to some of their operations.

14   Such regulation of air carriers and the services provided by air carriers is preempted by the

15   Airline Deregulation Act ("ADA").  *See* 49 U.S.C.  § 41713(b)(1) (2006).  The ADA contains an

16   express preemption clause:  no state may "enact or enforce a law, regulation, or other provision

17   having the force and effect of law related to a *price*, route, or *service* of an air carrier. . . ." 49

18   U.S.C. §41713(b)(1) (2006) (emphasis added).

19       68.    <u>The Ordinance Violates The U.S. and Washington State Constitutions</u>.  The

20   Ordinance does not set general terms of employment or set minimum employment standards.

21   It exceeds SeaTac's initiative power in part because it substantially impairs contract rights or

22   contractual relationships in violation of the Contract Clause of the U.S. and Constitution and

23   art. 1, sec. 23 of the State Constition.  The Ordinance requires that employers retain "qualified

COMPLAINT - 26
DWT.22218343v7.0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    Retention employees" for up to three months following the assumption of a contract.  The

2    Ordinance also increases labor costs by up to 68% and, in doing so, substantially impairs

3    employers' contractual obligation with a separate municipal corporation, the Port of Seattle, to

4    offer "street pricing" to customers in the airport.  Rather than set general terms and conditions

5    of employment or minimum employment standards, the successorship provision of the

6    Ordinance, in Section 7.45.060, require that an employer hire and retain specific employees

7    solely because that employer assumed a service contract, regardless of the needs of the

8    business.  These provisions impose wholly unanticipated burdens and obligations on the parties

9    to those agreements.

10           69.   <u>Offending Provisions Are Not Severable.</u>  The Ordinance contains a severability

11   clause, but the provisions of the Ordinance that exceed the initiative power of the City of

12   SeaTac are vital to the Ordinance's intended purposes.  The Court cannot sever the offending

13   provisions of the Ordinance from the non-offending provisions without rendering the

14   Ordinance incapable of accomplishing the legislative purposes.

15           **B.      Claims for Relief In Part Two**

16           70.   In Part Two of this Application and Complaint, Plaintiffs seek a Declaratory

17   Judgment that the proposed Ordinance exceeds the initiative power of the City of SeaTac and a

18   Writ of Prohibition or an injunction prohibiting the City and the City Clerk from taking any

19   further action to forward the proposed ordinance to the City Council or to King County or

20   taking any other action to place the measure on the ballot for the November 2013 election.

21           **1.      Declaratory Judgment**

22           71.   Pursuant to the Washington Declaratory Judgment Act, RCW 7.24 et seq., this

23   Court may declare the validity of a proposed initiative.

COMPLAINT - 27
DWT 22218343v7 0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

72.   The matter is ripe for declaratory relief because a dispute exists as to the validity of the Ordinance.

73.   A declaratory judgment action is proper to determine whether the Ordinance exceeds the initiative power of the City of SeaTac and thus whether it may be submitted to the qualified electors in the November 2013 election.

74.   The Court should enter a judgment that the Ordinance exceeds the initiative power of the City of SeaTac for the reasons set out above, as well as such other and further relief as may follow from the entry of such a declaratory judgment.

### 2.   Writ of Prohibition

75.   Under RCW 7.16.290, this Court has the authority to issue a Writ of Prohibition to arrest the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person.

76.   As explained above, the City of SeaTac has no authority or jurisdiction to present for possible adoption by voters a proposed Ordinance that exceeds the City's initiative power.

77.   Because the proposed Ordinance exceeds the City's power of initiative and because there is not a plain, speedy, and adequate remedy in the ordinary course of law, the Court should issue a Writ of Prohibition prohibiting the City of SeaTac and the City Clerk from taking any further steps to place the proposed Ordinance before the City Council for action or any other steps to place the proposed Ordinance on the November 5, 2013 ballot.

### 3.   Injunction

78.   Pursuant to RCW 7.40 *et seq.* the Court has the power to grant injunctive relief. The Court may grant an injunction at the time the action is commenced or at any time afterwards.

COMPLAINT - 28
DWT 22218343v7 0017572-000176

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

79.   The Ordinance has been deemed sufficient by the City Clerk to be presented to the City Council and/or placed on the November 2013 ballot.

80.   Only a valid initiative may be placed on a ballot for a local election.  An initiative that exceeds the power of the municipality is not a valid initiative as a matter of Washington law and may not be placed on an election ballot.

81.   For the reasons described in the preceding paragraphs of this complaint, Plaintiffs have a well-grounded fear of the immediate invasion of their rights should the Ordinance be presented to the City Council and/or placed on the November 2013 ballot.  Additionally, the Ordinance seeks to alter protections afforded by the United States and Washington constitutions, as well as state and federal law.  If enacted by the City of SeaTac, Plaintiffs would be subject to the time and cost of pursuing post-election litigation.  Plaintiffs will suffer actual and substantial injuries if an injunction is not entered preventing the measures from appearing on the ballot.

82.   A preliminary and permanent injunction precluding presentation of the Ordinance to the City Council and/or placement of the Ordinance on the November 5, 2013, ballot is also proper (1) because the presence of invalid initiatives steals attention, time, and money from other valid propositions on the same ballot; (2) to avoid the cost of placing before the voters measures that would be unenforceable if enacted; (3) to avoid the public confusion that would otherwise arise if the Initiatives are enacted and then later found to be invalid; (4) to eliminate potential negative impacts the Ordinance may have on the City of SeaTac's economic development efforts between now and the November 5, 2013 election; and (5) protect the taxpayers of the City of SeaTac and King County from having to pay for multiple lawsuits likely to arise post-election as the result of the enactment of an unlawful ordinance.

COMPLAINT - 29
DWT 22218343v7 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 39
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

83.     If the Court does not enter the requested Writ of Prohibition, an injunction is the only other possible remedy to prevent the placement of an invalid initiative on the November 5, 2013, ballot.  The court should enter an injunction prohibiting the City and City Clerk from taking any further steps to place the proposed Ordinance before the City Council for action or any other steps to place the proposed Ordinance on the November 5, 2013 ballot.

## VI.     PRAYER FOR RELIEF

Based on the allegations set out above, Plaintiffs respectfully request the following relief:

**<u>Part One:</u>**

1.     For issuance of a Writ of Review reversing the determination by the City Clerk that the Petition is supported by a sufficient number of valid signatures;

2.     For issuance of a Writ of Prohibition forbidding the City and the City Clerk from taking any further action with regard to the Ordinance, including, but not limited to, taking any action to place the proposed Ordinance before the City Council or for action or any other steps to forward the proposed Ordinance to King County for placement on a ballot, until after the City Clerk (a) undertakes the required substantive review of the legality of the title, text, and content of the proposed Ordinance and (b) determines whether the petition has been was validly signed by the number of registered voters of the City equal to at least fifteen percent (15%) of the total number of names of persons listed as registered voters within the City on the day of the last preceding City general election (valid signatures not to include signatures that appear without a date or an address, signatures that appear without a date written by the person actually signing, signatures that appear on petitions that did not have a copy of the Ordinance attached, or signatures of persons signing multiple times).

COMPLAINT - 30
DWT 22218343v7 0017572-000176

ATTACHMENTS TO NOTICE OF REMOVAL - 40
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    3.    For issuance of a Writ of Mandate compelling the City and City Clerk to do the

2    following, as required by SMC 1.10.140, prior to taking any further action on the petition and

3    proposed Ordinance:

4         a.    Conduct a review of the sufficiency of the signatures in support of the

5    petition and determine whether the petition is supported by sufficient valid signatures (not

6    including signatures that appear without a date or an address, signatures that appear without a

7    date written by the person actually signing, signatures that appear on petitions that did not have a

8    copy of the Ordinance attached, or signatures of persons signing multiple times);

9         b.    Conduct a substantive review of the legality of the title, text, and content

10   of the proposed Ordinance and then determine whether the title, text, and content of the proposed

11   Ordinance are legal and sufficient;

12        c.    Issue a Certificate of Sufficiency or a Certificate of Insufficiency based on

13   these reviews; and

14        d.    Convene the Petition Review Board to (a) conduct a hearing to determine

15   the legality and sufficiency of the signatures supporting the Petition and the legality and

16   sufficiency of the title, text, and content of the proposed Ordinance and (b) issue a Final

17   Certificate of Sufficiency or a Final Certificate of Insufficiency.

18   **Part Two:**

19   4.    For a judgment declaring that the Ordinance is beyond the scope of the initiative

20   power of the City of SeaTac, as well as such other and further relief as may follow from the entry

21   of such a declaratory judgment;

22   5.    For a Writ of Prohibition prohibiting the City of SeaTac and the City Clerk from

23   taking any further steps to place the proposed Ordinance before the City Council for action or

COMPLAINT - 31
DWT 22218343v7 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 41
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1  any other steps to forward the proposed Ordinance to King County for placement on a ballot for

2  any election.

3        6.      For a permanent injunction prohibiting the City of SeaTac and the City Clerk

4  from taking any further steps to place the proposed Ordinance before the City Council for action

5  or any other steps to forward the proposed Ordinance to King County for placement on a ballot

6  for any election;

7        7.      For judgment against the City for Plaintiffs' costs and attorneys' fees pursuant to

8  RCW 7.16.260; and

9        8.      For such other relief that the Court deems appropriate.

10     DATED this 8th day of July, 2013.

11                      Davis Wright Tremaine LLP
                    Attorneys for Alaska Airlines, Inc. and Washington

12                      Restaurant Association

13

14                      By s/Harry J. F. Korrell
                       Harry J. F. Korrell, WSBA #23173

15

16

17                      Pacific Alliance Law, PLLC
                    Attorneys for Filo Foods, LLC and BF Foods, LLC

18

19                      By s/Cecilia Cordova via approval
                      Cecilia Cordova, WSBA #30095

20

21

22

23

COMPLAINT - 32

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# Attachment 2

1

2

3

4

5              SUPERIOR COURT OF THE STATE OF WASHINGTON
                              KING COUNTY
6

7   FILO FOODS, LLC; BF FOODS, LLC;          )
    ALASKA AIRLINES, INC; and THE            )
    WASHINGTON RESTAURANT                    )   No. 13-2-25352-6KNT
8   ASSOCIATION,                             )
                                             )
9                        Plaintiffs,         )   APPLICATION FOR WRITS OF
                                             )   REVIEW, MANDATE, AND
10         v.                                )   PROHIBITION
                                             )
11  THE CITY OF SEATAC; KRISTINA GREGG,      )   and
    CITY OF SEATAC CITY CLERK, in her        )
12  official capacity; and the PORT OF SEATTLE, )  AMENDED COMPLAINT FOR
                                             )   DECLARATORY AND
13                       Defendants.         )   INJUNCTIVE RELIEF
                                             )
14  SEATAC COMMITTEE FOR GOOD JOBS,          )
                                             )
15                       Intervenors.        )
                                             )
    _____)
16

17         Plaintiffs, by and through their undersigned counsel, allege the following:

                            I.      INTRODUCTION
18

19         On or about June 5, 2013, the SeaTac Committee for Good Jobs filed an initiative

20  petition and proposed ordinance entitled "Ordinance Setting Minimum Standards For Hospitality

21  and Transportation Industry Employers" (the "Ordinance") with the City of SeaTac City Clerk's

22  office.[1]  The Ordinance, if adopted, would amend the SeaTac Municipal Code ("SMC") to

23  impose a series of unprecedented requirements and restrictions on certain private employers in

    _____
    [1] A true and correct copy of the proposed Ordinance filed with the City of SeaTac City Clerk's
    office is attached hereto as Exhibit A.

    AMENDED COMPLAINT FOR
    DECLARATORY AND INJUNCTIVE RELIEF  - 1        Davis Wright Tremaine LLP
    DWT.22710780v3.0017572-000176                     LAW OFFICES
                                                        Suite 2200
        ATTACHMENTS TO NOTICE OF REMOVAL - 44         1201 Third Avenue
        Case No.                                   Seattle, WA  98101-3045
                                                206.622.3150 main · 206.757.7700 fax

1    the hospitality and transportation industries.  Among other things, the Ordinance would impose

2    the highest minimum wage in the country (increasing the minimum wage in the city, but only for

3    certain industries, by 68%; regulate how tips are shared among employees; restrict employers'

4    ability to hire additional part-time workers; impose retention and successorship obligations that

5    restrict employers' right to select their own employees; impose costly sick and safe time

6    obligations on employers; and subject employees' confidential medical information to public

7    review.  Moreover, the Ordinance can be enforced by any person or entity, without regard for

8    whether they have been harmed by a violation or are even employed or doing business in the

9    City of SeaTac.

10           In its processing of the proposed Ordinance, the City of SeaTac has failed to follow the

11   procedures required for the processing of initiatives set out in the SeaTac municipal code, and

12   the Ordinance exceeds the power of the City of SeaTac to adopt legislation, by initiative or

13   otherwise.

14           Specifically,

15   (a)     the number of valid signatures on the initiative petition is not sufficient to

16           advance the measure to the City Council for action or for placement on the

17           November ballot;

18   (b)     the City of SeaTac did not perform a review of the legality and sufficiency of the

19           title and text of the Ordinance, as required by SMC 1.10.140, prior to issuing a

20           Certificate of Sufficiency regarding the initiative petition (thus potentially

21           misleading the City Council and voters regarding the measure's legality);

22   (c)     the Ordinance exceeds the scope of the City of SeaTac's initiative power and

23           legislative authority.  The Ordinance addresses multiple subjects, and those

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 2
DWT.22710780v3.0017572-000176
       ATTACHMENTS TO NOTICE OF REMOVAL - 45
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   subjects are not reflected in the title; the measure conflicts with state and federal

2   law; and many provisions purport to regulate aspects of the employment

3   relationship that are preempted by federal law; and

4   (d)   the City of SeaTac failed to create a Petition Review Board to consider and act

5   upon any evidence or reports of matters relating to initiative petitions which the

6   Board may determine warrant investigation or legal action.

7   **In <u>Part One</u> on this suit**, Plaintiffs seek writs, pursuant to SMC 1.10.210, reversing the

8   City Clerk's decision to issue a Certificate of Sufficiency; prohibiting further action until the

9   City Clerk reviews the legality and sufficiency of the title and text of the Ordinance as required;

10   and mandating that the City conduct the review required by SMC 1.10.140.

11   **In <u>Part Two</u> of this suit**, Plaintiffs seek a judgment declaring that the proposed

12   Ordinance is invalid because it exceeds the scope of City of SeaTac's initiative power and

13   legislative authority, and declaring that the Ordinance cannot be enforced at the SeaTac Airport,

14   which is subject to the Port of Seattle's jurisdiction, and a Writ of Prohibition or an injunction

15   prohibiting the City of SeaTac or the City Clerk from forwarding the proposed Ordinance to the

16   City Council for action and from taking any other action to forward the Ordinance to King

17   County for placement on a ballot for an election.

18   ## II.   PARTIES, JURISDICTION, AND VENUE

19   1.   <u>Plaintiffs Filo Foods LLC and BF Foods LLC</u>.  Plaintiffs Filo Foods LLC ("Filo")

20   and BF Foods LLC ("BF Foods") are Washington limited liability corporations located in the

21   City of SeaTac.  Filo and BF Foods are small food and beverage concessionaires operating out

22   of SeaTac Airport, employing ten or more nonmanagerial, nonsupervisory employees.   If the

23   proposed Ordinance is adopted, Filo and BF Foods would be directly affected by the proposed

Ordinance in several ways, including the following:  (A) If Filo or BF Foods seek to operate in

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 3
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 46
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   a new location, they would be forced to hire the employees of the business which had

2   previously operated out of that location.  If that happened, then their current employees could

3   lose their jobs. (B) The employees of Filo Foods and BF Foods have not chosen to be

4   represented by a union, but the proposed ordinance improperly encourages unionization and

5   collective bargaining.  (C) Filo's and BF Foods' labor costs would increase dramatically.  (D)

6   Filo and BF Foods, like other concessionaires operating out of SeaTac Airport, have a

7   contractual obligation to offer "street pricing."  Street pricing prohibits Filo and BF Foods from

8   passing increased labor costs to its customers, and Filo and BF Foods could be forced to take

9   steps, damaging to its business, in order to keep expenses from exceeding revenues (such as

10  laying off employees or cutting back on the quality and quantity they offer customers).  (E) It

11  is industry practice for employees to engage in tip pooling, allowing cooks, dishwashers,

12  runners, expeditors, hostesses, bartenders, and others to participate in tips as part of the tip

13  system.  If the proposed Ordinance is passed, then some of Filo's and BF Foods' employees

14  would lose tips as part of their compensation.

15          2.      Plaintiff Alaska Airlines, Inc.  Plaintiff Alaska Airlines, Inc. ("Alaska") is an

16  Alaska corporation with its headquarters in the City of SeaTac.  Alaska provides passenger air

17  transportation and related services, by itself and through contractors, at the Seattle-Tacoma

18  International Airport (hereinafter, "SeaTac Airport").  Alaska would be directly affected by the

19  proposed Ordinance in several ways, including the following:  (A) In providing services to

20  Alaska and its passengers, Alaska's four major contractors employ in excess of 500 full-time

21  employees in those efforts.  If the proposed Ordinance were adopted and applied to Alaska's

22  contractors, their labor costs would increase dramatically.  If that happened, because of how

23  pricing is determined in the agreements with these contractors, the prices charged by the

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 4
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 47
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    contractors to Alaska would increase dramatically as well.  Alaska would have to pass some or

2    all of that price increase on to its customers, and the market for air transportation services is

3    price sensitive.  (B)  It is a customary practice in the industry for airlines to provide some

4    services to each other.  The measure purports to exempt certified air carriers performing

5    services such as passenger check-in, baggage check, wheelchair escort, baggage handling, and

6    other support services "for itself," but it does not exempt air carriers performing such services

7    for other airlines.  Any air carriers, including Alaska, who participate in this customary practice

8    would be directly affected by the proposed Ordinance.  (C)  By drastically increasing the labor

9    costs to the hospitality and transportation industries in SeaTac, the proposed Ordinance would

10   make hotel rooms, rental cars, and parking more expensive, and this will make Seattle a more

11   expensive destination and transportation hub.  A large portion of Alaska's business comes from

12   travelers flying to Seattle, and if Seattle becomes a more expensive destination, Alaska's

13   business would suffer.

14        3.    Plaintiff Washington Restaurant Association.  Plaintiff Washington Restaurant

15   Association is a trade association representing and advocating the interests of the restaurant

16   industry in Washington.  A number of its members will be adversely affected by the proposed

17   Ordinance, including the way it would affect Filo Foods, LLC and BF Foods, LLC.

18        4.    Serious Public Importance.  In addition to causing the harms suffered or likely to

19   be suffered by the Plaintiffs herein, the proposed Ordinance and its legality are matters of

20   serious public importance and immediately affect substantial segments of the population.  The

21   disposition of this matter will have a direct bearing on commerce, finance, labor, and industry.

22

23

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 5
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 48
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1        5.      Defendant City of SeaTac.  Defendant City of SeaTac (the "City") is a non-

2    charter code city and a municipal corporation organized and existing under the laws of the

3    State of Washington and does business in King County, Washington.

4        6.      Defendant City of Sea Tac City Clerk.  Defendant Kristina Gregg is the City of

5    SeaTac City Clerk ("City Clerk").  Plaintiffs name the defendant in her official capacity only.

6    This Court has personal jurisdiction over the City Clerk because the City Clerk maintains offices

7    and transacts business in the State of Washington.

8        6.a.    Defendant Port of Seattle.  Defendant Port of Seattle ("Port") is a municipal

9    corporation of the State of Washington with its principal place of business in Seattle,

10   Washington.  The Port owns and operates Sea-Tac Airport and does business in King County,

11   Washington.

12       7.      Venue.  Venue is proper in King County pursuant to RCW 4.12.020.  Venue is

13   also proper because defendants do business in King County.

14       8.      Jurisdiction to Issue Writs.  This Court has jurisdiction to issue writs of review,

15   mandate, and/or prohibition pursuant to SMC 1.10.210 and RCW 7.16 *et* seq..

16       9.      Jurisdiction to Provide Declaratory and Injunctive Relief.  This Court has

17   jurisdiction over this controversy pursuant to RCW 7.24 because Plaintiffs seek a

18   determination of the legality of the Ordinance, including whether enacting the Ordinance is

19   within the City's initiative power and whether the Ordinance is enforceable at the Sea-Tac

20   Airport, as its proponents contend, or unenforceable at the airport (and thus exceeds the City's

21   legislative power for that reason as well).  This Court also has jurisdiction over this

22   controversy pursuant to RCW 7.16 and 7.40 because Plaintiffs seek a Writ of Prohibition or an

23   injunction preventing placement of the Ordinance on the November 2013 ballot.

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 6
DWT.22710780v3.0017572-000176
     ATTACHMENTS TO NOTICE OF REMOVAL - 49
     Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

### III.   THE PROPOSED ORDINANCE

10.   On or about June 5, 2013, SeaTac Committee for Good Jobs filed an initiative petition and proposed ordinance entitled "Ordinance Setting Minimum Employment Standards For Hospitality and Transportation Industry Employers" with the City Clerk's office.

11.   The Ordinance seeks to amend the SeaTac Municipal Code to regulate some private employers in the hospitality and transportation industries.  The measure contains numerous provisions, addressing a variety of topics, among them the following:

**Minimum Wage.**

    a.   Mandates a minimum wage of $15 per hour, but only for some employers in the Hospitality and Transportation Industries.

    b.   Increases the minimum wage each year.

    c.   Excludes tips, gratuities, service charges, and commissions from the minimum wage.

**Sick Leave.**

    a.   Mandates the employers in the Hospitality and Transportation Industry provide employees with immediate entitlement to accrue and to use one hour of paid sick and safe time for every 40 hours worked.

    b.   Requires that employers pay employees a lump sum payment at the end of the calendar year equivalent to the compensation due for any accrued but unused sick and safe time.

    c.   Regulates the reasons why an employee is entitled to sick and safe time.

    d.   Does not allow employers to require documentation to support a request for or safe sick time.

    e.   Requires that employers retain records documenting sick and safe time, including medical certifications, re-certifications, and medical histories of employees and their family members and make such records available for inspection by the SeaTac City Manager.

**Restricting Employment.**

    a.   Interferes with the ability of employers to hire additional workers and subcontractors by requiring that employers offer extra hours of work to qualified part time employees before hiring additional part-time employees and subcontractors.

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 7
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 50
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

**Tip Pooling.**

    a.  Requires that any service charge or tips be retained by or paid to the employee who performs the services for which the tip or service charge is collected.

    b.  Requires that tips and service charges be pooled and distributed among the workers who perform services.

    c.  Prohibits the distribution of tips to employees who do not directly provide the services at issue, regardless of an employer's alternative legal tip pooling system.

**Retention Of Employees.**

    a.  Requires that an employer give notice to all employees 60-days prior to the termination of a contract. The proposed ordinance does not define what kind of contract must be terminated to trigger this requirement.

    b.  Interferes with the ability of parties to contract for the provision of services and employers' ability to arrange its workforce by requiring that a successor employer retain the employees of the predecessor employer, before hiring additional employees or transferring workers from elsewhere, regardless of the successor employer's needs or desire to retain its own employees.

    c.  Requires that employees of a predecessor employer be employed for no less than 90-days once hired, regardless of the successor employer's needs.

    d.  Requires that employees of a predecessor employer be offered positions according to seniority, regardless of the successor employer's policies, practices, or needs.

**Recordkeeping Requirements.**

    a.  Invades the privacy of employees by requiring that employers maintain and make available for inspection numerous personnel records.

    b.  Imposes liability on employers for substantive violations of the ordinance based solely on a lack of records.

**Enforcement.**

    a.  Abrogates State law standing requirements by allowing any person (defined to include associations, corporations, and other "entities") to bring a complaint against an employer in King County Superior Court regardless of whether or not the suing "person" is injured.

    b.  Requires the City of SeaTac to adopt auditing procedures sufficient to monitor and ensure compliance, investigate complaints, and initiate legal action to remedy violations.

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 8
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 51
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

**Protected Activity.**

    a.  Prohibits retaliation against employees who engage in certain protected activity.

    b.  Defines protected activity to include communicating with a union about alleged employer violations of the Ordinance.

**Waiver.**

    a.  The provisions of the Ordinance apply to all covered employers, and individual employees cannot agree to waive any of its provision, but

    b.  The burdens of the Ordinance may be avoided if the covered employer enters a "bona fide" collective bargaining agreement with a union that includes a waiver of the provisions.

**Application.**

The Ordinance applies to employers that operate or provide the following services within the City of SeaTac:

    a.  Transportation services including, but not limited to, curbside check-in and baggage handling, cargo handling, aircraft cleaning and washing, and aircraft fueling.

    b.  Any janitorial and custodial service, facility maintenance service, security service, or customer service performed in a facility where transportation services are also performed, regardless of whether these secondary services are related to the transportation services.

    c.  Rental car, shuttle transportation, and parking lot management services.

    d.  Hotels with one hundred or more guest rooms.

    e.  Foodservice or retail provided in public facilities, corporate cafeterias, conference centers and meeting areas, and hotels.

    IV.    **PART ONE:  APPLICATION FOR WRITS PURSUANT TO SEATAC MUNICIPAL CODE 1.100.210 AND RCW 7.16**

    A.    **Limits on the Initiative Power in Municipalities.**

    12.   RCW 35A.11.080 – RCW 35A.11.100 allows non-charter code cities such as the City of SeaTac to provide for direct legislation by the people through initiatives.  RCW 35A.11.100 allows such cities to exercise its initiative powers generally "in the manner set forth for the commission form of government in RCW 35.17.240 through 35.17.360".  This

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 9
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 52
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

municipal initiative power, however, is limited.   The "subject in title" and "single subject" rules that apply to state-wide initiatives also apply to SeaTac initiatives.  RCW 35A.12.130; SMC 1.10.080.  These rules ensure that legislators and voters both know what they are voting for or against and that they are not forced to adopt legislation on one topic that they do not approve in order to pass legislation on another topic that they do support.  In addition, a municipality such as the City of SeaTac does not have the power to adopt legislation by initiative that conflicts with the United States or Washington State constitutions, or with other state or federal laws. SMC 1.10.140; Wash. Const. art. XI, § 10.  Likewise, a municipality does not have the power to adopt legislation by initiative that purports to regulate issues preempted by federal law.  *City of Seattle v. Burlington N. R.R.*, 145 Wn.2d 661 (2002).

13.   Legislation proposed by initiative often has not had the benefit of research, negotiation, compromise, and other checks and balances of the legislative process and, as a result, can reflect a myopic or one-sided view of an issue or problem.  Because an initiative may not have been vetted by legislative staff and counsel, legislation proposed by initiative often turns out to be in conflict with or preempted by state or federal legislation.  *Wash. Citizens Action of Wash. v. State*, 162 Wn.2d 142 (2007); *City of Sequim v. Malkasian,* 157 Wn.2d 251 (2006); *Amalgamated Transit v. State*, 142 Wn.2d 183 (2000).

14.   The SeaTac municipal code imposes safeguards to reduce some of the risks of legislating by initiative.  SMC 1.10.140 requires that before an ordinance proposed by initiative may be passed to the City Council for either adoption or placement on the ballot at the next election, the City Clerk, in consultation with the City Attorney, must review and approve the "legality" of the "title and text" of the proposed measure either before initiative sponsors begin collecting signatures or, if such prior approval was not provided, then prior to forwarding the

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 10
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 53
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   proposed Ordinance to the City Council for action (either adopting it or putting it on the ballot

2   at the next election).  SMC 1.10.110 requires that a proposed Ordinance be supported by

3   petitions containing valid signatures from the number of registered voters of the City equal to

4   at least fifteen percent (15%) of the total number of names of persons listed as registered voters

5   within the City on the day of the last preceding City general election. SMC 1.10.140 sets out

6   the criteria for determining whether signatures are valid.

7       15.    With respect to the proposed Ordinance, the City Clerk has issued a Certificate of

8   Sufficiency and has announced her intention to present the measure to the City Council on

9   July 8, 2013.  The City Clerk issued this certificate based on an insufficient number of valid

10   signatures and without reviewing the legality of the measure as required by SMC 1.10.140.

11   Absent immediate action by the Court, the City of SeaTac will be allowed to act in excess of its

12   initiative power and legislative authority by placing an unlawful measure on the

13   November 5, 2013 ballot.

14   **B.    Allegations**

15       **1.    The City Issued a Certificate of Sufficiency Without Reviewing the**
        **Legality and Sufficiency of the Title and Text of the Ordinance**

16   16.    RCW 35A.11.080 – RCW 35A.11.100 and SMC 1.10.040 grant the voters of the

17   City the powers of initiative and referendum subject to the limitations of state law, the general

18   law, and the City's initiative and referendum procedure.

19   17.    SMC 1.10.100 requires that a sample petition be submitted to the City Clerk

20   before an initiative can be distributed to the public for the solicitation of signatures.

21   18.    Pursuant to SMC 1.10.100(C), the sponsor of an initiative petition may request

22   that the City Clerk, with advice of the City Attorney, review, require changes, and/or approve

23   the content and format of the petition and the title and text of the proposed ordinance prior to

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 11
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 54
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  obtaining signatures.  If the sponsor does not request review, the City Clerk, with advice of the

2  City Attorney, shall determine the legality and sufficiency of the title and text of the proposed

3  ordinance before the petition is referred to City Council for adoption or referral to the King

4  County Department of Elections. SMC 1.10.140.  Thus, at some point prior to referring any

5  ordinance proposed by petition to the City Council, the City Clerk must review the legality of

6  the title, content, and text of the measure.

7       19.    On or about April 26, 2013, SeaTac Committee for Good Jobs and SeaTac

8  residents Mahad Aden, Joseph Diallo, Patricia L. Reid, and Chris Smith (collectively, the

9  "Petition Sponsors") submitted a sample petition to the SeaTac City Clerk.  The Petition

10  Sponsors requested, pursuant to SMC 1.10.100(c), that the City Clerk, with the advice of the

11  City Attorney, review the content and format of the petition, including the title and text of the

12  proposed ordinance.

13       20.    Following their submission of the Ordinance, the Petition Sponsors consulted

14  with the City Attorney regarding the format of the Ordinance so that, if passed, it could easily

15  be codified in the Municipal Code.

16       21.    On or about May 1, 2013, the Petition Sponsors resubmitted a revised version of

17  the sample petition to the SeaTac City Clerk.  The revised version of the sample petition was

18  similar to the original submission but with some minor corrections.

19       22.    On or about May 1, 2013, the City Clerk approved the format of the petition.

20  Neither the City Clerk nor the City Attorney made any determination with regard to the legality

21  and sufficiency of the title, content, or text of the proposed ordinance prior to the petition being

22  distributed to the public for the solicitation of signatures.

23

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 12
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 55
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

23.    On or about May 9, 2013, the City's Legal Department issued an opinion that the subject matter of the Ordinance was an area that could be regulated by the City.  The opinion was issued in response to a request by City Councilmember Pam Fernald.  Although the opinion found that the City could regulate "wages, hours, and other working conditions," the opinion specifically addressed only the Ordinance's minimum wage and safe and sick time provisions.  The Legal Department did not consider, and the opinion did not address, any other aspects of the Ordinance's legality.

24.    On or about June 19, 2013, the City Clerk issued a memorandum stating that she had determined the legality and the sufficiency of the title and text of the proposed Ordinance.  The City Clerk determined only that "The proposed Ordinance is a subject that can be submitted to the City via the Initiative process."  The City Clerk did not make any other determinations regarding the legality and sufficiency of the title and text of the Ordinance.

25.    SMC 1.10.170 creates a Petition Review Board (consisting of the Mayor, City Manager, and Police Chief) to review any matters relating to initiative petitions which warrant investigation, report to the City Council, or legal action.  The Petition Review Board has never met to consider the proposed Ordinance.

26.    On or about June 21, 2013, Plaintiff Alaska, along with the Southwest King County Chamber of Commerce and the Association of Washington Business, sent a letter to the City Clerk asking, among other things, whether she had considered various issues with regard to the legality and sufficiency of the title and text of the Ordinance and if not, when she intended to do so.  Alaska further requested that the City Clerk convene a Petition Review Board to consider the Ordinance before further processing the proposed ordinance.  The City Clerk did not respond to Alaska's letter or request.

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 13
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 56
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

27.   On July 2, 2013, Plaintiffs Alaska, Filo, and BF Foods sent a letter to the City Clerk petitioning the City of SeaTac to convene a Petition Review Board to consider the legality and sufficiency of the title, text, and content of the proposed Ordinance.  Other than acknowledging receipt of this letter, the City Clerk has not responded to this request by Plaintiff Alaska.

2.     **The City Issued a Certificate of Sufficiency Even Though the Signatures on the Initiative Petition Are Not Sufficient**

28.   On or about June 5, 2013, SeaTac Committee for Good Jobs filed with the City Clerk copies of the petition in support of the Ordinance signed by 2,506 individuals.  The City Clerk forwarded the copies of the petition to the Superintendent of Elections of the King County Department of Elections to check compliance with the signature requirements of SMC 1.10.140.

29.   The Superintendent of Elections of the King County Department of Elections, as ex officio supervisor of city elections, examined signatures on the petition.

30.   On or about June 20, 2013, the Superintendent of Elections of the King County Department of Elections completed verification of the signatures on the petition.  The Superintendent of Elections of the King County Department of Elections "verified" 2,283 signatures of the 2,506 signatures submitted with the petition, meaning the County examined those signatures to determine if they should be counted.  Of the 2,283 verified signatures, the Superintendent of Elections of the King County Department of Elections "challenged" 668 signatures, meaning it rejected them either because they were not signatures from registered voters living in the City of SeaTac or they failed to satisfy the requirements of SMC 1.10.140. The Superintendent of Elections of the King County Department of Elections determined that the remaining 1,615 signatures were valid signatures from registered voters living in SeaTac.

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 14
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 57
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1   SMC 1.10.110 requires that to qualify for mandatory consideration by the City Council and

2   placement on the ballot at the next election, the petition be signed by 1,536 registered voters.

3        31.   The Superintendent of Elections of the King County Department of Elections

4   determined that 44 individuals signed the petition multiple times.  SMC 1.10.140 requires that

5   when a person signs a petition two or more times, all signatures, including the original, must be

6   stricken.  King County did not strike (and instead counted) the original signature when a

7   person signed the petition two or more times.  Those 44 original signatures should have been

8   rejected.

9        32.   One hundred thirty six of the signatures that were found sufficient and counted by

10  the Superintendent of Elections of the King County Department of Elections did not include a

11  date as required by law.  SMC 1.10.140 requires that signatures be followed by a date that is

12  not more than six months prior to the date of filing of the petition.  Signatures not followed by

13  a date should have been rejected.  King County did not reject, and instead counted, 136

14  signatures that did not have dates.

15       33.   Thirty six of the signatures that were found sufficient and counted by the

16  Superintendent of Elections of the King County Department of Elections plainly were dated by

17  an unknown third party, on an unknown date.  SMC section 1.10.140 requires that signatures

18  that have been altered shall be invalid and shall not be counted.  The Superintendent of

19  Elections of the King County Department of Elections improperly counted these signatures.

20       34.   Thirty eight of the signatures that were found sufficient and counted by the

21  Superintendent of Elections of the King County Department of Elections appeared on petition

22  pages that did not have a copy of the proposed Ordinance attached to them as required by law.

23

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 15
DWT 22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 58
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   SMC 1.10.080 requires that a copy of the petition be attached to every single petition signature

2   page.  These 38 signatures should have been rejected.

3       35.   Twelve signatures did not include an address.  The format of the petition

4   mandated by SMC 1.10.080 requires that each registered voter provide their address when they

5   sign.  The Superintendent of Elections of the King County Department of Elections improperly

6   counted these signatures, and they should have been excluded.

7       36.   Thus, 266 were found sufficient and counted that should have been rejected by the

8   Superintendent of Elections of the King County Department of Elections.  Because those

9   signatures were not valid and should have been rejected under SMC1.10.140, the petition is

10  supported only by, at most, 1349 signatures, fewer than the 1,536 required by SMC 1.10.110.

11      37.   On June 20, 2013, the Superintendent of Elections of the King County

12  Department of Elections certified to the City Clerk that the petition was supported by a

13  sufficient number of valid signatures.

14      38.   On June 28, 2013, the City Clerk issued a Certificate of Sufficiency with regard to

15  the petition.  This Certificate of Sufficiency was improperly issued because the petition was

16  not, in fact, supported by a significant number of valid signatures; because the City Clerk failed

17  to conduct the required review of the legality of the measure; and because the Petition Review

18  Board has not yet considered any aspect of the petition, despite requests to do so.

19      39.   The SeaTac City Attorney is scheduled to present the Ordinance to the City

20  Council and answer questions on July 9, 2013, and on July 23, 2013, the City Council is

21  scheduled to vote on whether to adopt the Ordinance.  Pursuant to SMC 1.10.220, if the City

22  Council does not adopt the proposed (and unlawful) ordinance, the City Clerk will forward it to

23  King County for placement on the ballot for the November 5, 2013, election.

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 16
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 59
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

**C.      Claims For Relief In Part One**

2       40.    In Part One of this Application and Complaint, Plaintiffs seek the issuance of

3   writs pursuant to SMC 1.10.210 and RCW 7.16.

4       41.    <u>Writ of Review</u>.  The determination by the City Clerk that the petition is

5   supported by a sufficient number of valid signatures should be reviewed and reversed.  Before

6   a Certificate of Sufficiency may be issued, the City Clerk was required to determine that the

7   Petition was signed by the number or registered voters of the City equal to at least fifteen

8   percent (15%) of the total number of names of persons listed as registered voters within the

9   City on the day of the last preceding City general election.  SMC 1.10.100**.**  The City Clerk

10  relied on a certification by the Superintendent of Elections of the King County Department of

11  Elections, but as explained above, the Superintendent improperly counted at least 266

12  signatures that failed to meet the requirements of SMC 1.10.140 and thus should have been

13  rejected.

14      42.    This court should issue a Writ of Review, pursuant to SMC 1.10.210 and RCW

15  7.16.040 and reverse the determination that the Petition is supported by the necessary

16  signatures, which determination necessarily underlies the City Clerk's June 28, 2013,

17  Certificate of Sufficiency.

18      43.    <u>Writ of Prohibition</u>.  The City Clerk has failed to make the required review of the

19  legality and sufficiency of the title, content, and text of the proposed Ordinance.  Any review

20  conducted by the City Clerk so far was limited to the format of the petition and the narrow

21  question of whether the City had the authority, generally, to regulate wages and hours of

22  employees in the City.  The City has thus far ignored a request that the City conduct a proper

23  review of the Ordinance and convene the Petition Review Board created for this purpose by

SMC 1.10.170.

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 17
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 60
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

44.     This court should issue a Writ of Prohibition, pursuant to SMC 1.10.210 and RCW 7.16.300, forbidding the City and the City Clerk from taking any further action with regard to the Ordinance, including, but not limited to, taking any action necessary to place the proposed Ordinance before the City Council for adoption or taking any action to place the Ordinance on the November 5, 2013 ballot until after the City Clerk undertakes the required review of the legality of the title, text, and content of the proposed Ordinance and then determines: (a) that the title, text, and content of the proposed Ordinance are legal and sufficient and (b) that the petition was validly signed by the required number of registered voters (valid signatures not to include signatures that appear without a date or an address, signatures that appear without a date written by the person actually signing, signatures that appear on petitions that did not have a copy of the Ordinance attached, or signatures of persons signing multiple times).

45.     <u>Writ of Mandate</u>.  The Court should issue a Writ of Mandate compelling the City and City Clerk to do the following, as required by SMC 1.10.140

a.      conduct a review of the sufficiency of the signatures in support of the petition and determine whether the petition is supported by sufficient valid signatures (not including signatures that appear without a date or an address, signatures that appear without a date written by the person actually signing, signatures that appear on petitions that did not have a copy of the Ordinance attached, or signatures of persons signing multiple times);

b.      Conduct a review of the legality of the title, text, and content of the proposed Ordinance and then determine whether the title, text, and content of the proposed Ordinance are legal and sufficient;

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 18
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 61
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   c.  Issue a Certificate of Sufficiency or Certificate of Insufficiency based on

2 this review; and

3   d.  Convene the Petition Review Board to conduct a hearing to determine the

4 legality and sufficiency of the signatures supporting the petition and the title, text, and content of

5 the proposed Ordinance and to issue a Final Certificate of Sufficiency or Final Certificate of

6 Insufficiency.

7   46. <u>Absence of an Otherwise Plain, Speedy, and Adequate Legal Remedy</u>.  Plaintiffs

8 have no plain, speedy, and adequate remedy by appeal or other legal action.

9   47. Plaintiff Alaska Airlines and others requested that the City Clerk conduct the

10 required review and make a determination as to the legality and sufficiency of the title and text

11 of the proposed Ordinance.  The Plaintiffs and others requested the City of SeaTac to convene

12 a Petition Review Board before taking any further action with regard to the Ordinance.  Alaska

13 Airlines and others also requested that the City Clerk review the sufficiency of the submitted

14 signatures.  The City has thus far not honored these requests.

15   48. SMC 1.10.210 requires Plaintiffs to apply to this court for the aforementioned

16 writs, and RCW 7.16 gives this court the authority to issue the requested writs.  If the requested

17 writs are not granted, the proposed Ordinance will be placed on the ballot without a

18 determination by the City Clerk that the title and text of the proposed Ordinance is legal and

19 without the petition initiating it having been validly signed by the required number of

20 registered voters of the City.  No remedy at law would provide any relief, and equitable relief

21 in the form of a permanent injunction may not be available or available quickly enough to

22 provide relief before the proposed ordinance is forwarded to King County for inclusion on the

23 November 5, 2013, ballot.

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 19
DWT 22710780v3 0017572-000176
 ATTACHMENTS TO NOTICE OF REMOVAL - 62
 Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

49.   <u>Costs and Fees</u>.  The Court should award Plaintiffs' costs of suit, attorneys' fees, and such other additional relief as the court may deem appropriate pursuant to RCW 7.16.260.

## V.   PART TWO: COMPLAINT FOR DECLARATORY JUDGMENT AND A WRIT OF PROHIBITION OR INJUNCTION

50.   In this Part Two, Plaintiffs seek a Declaratory Judgment that the proposed Ordinance exceeds SeaTac's initiative power and a Writ of Prohibition or Injunction to prevent the City and City Clerk from taking any action to place the invalid initiative on a ballot for an election.

### A.   Allegations

51.   <u>State Law Authorizes Local Initiatives</u>.  Non-charter code cities such as SeaTac "have all powers possible for a city or town to have under the Constitution of the state, and not specifically denied to code cities by law."  RCW 35.11.020.  A state statute authorizes cities to provide for "direct legislation by the people through the initiative and referendum upon any matter within the scope of the powers, functions, or duties of the city."  RCW 35.22.200. RCW 35A.11.080 – RCW 35A.11.100 expressly authorizes non-charter code cities power to adopt initiative powers.

52.   <u>SeaTac's Municipal Code Authorizes Local Initiatives, Subject To State Law</u>.  In June 1990, the City of SeaTac City Council adopted Ordinance 90-1042 establishing initiative and referendum power for the City.  Ordinance 90-1042 became codified as SeaTac Municipal Code Chapter 1.10.  Section 1.10.040 of the SeaTac Municipal Code ("SMC") grants the voters of the City of SeaTac the powers of initiative and referendum subject to the limitations of State law, the general law, and the City's initiative and referendum procedure.

53.   <u>Local Initiatives Are Limited In Permissible Scope</u>.  Cities have no authority to adopt by initiative any Ordinance that exceeds the City's authority to legislate.  For example,

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 20
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 63
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    cities may not adopt initiatives that purport to create local laws conflicting with the United

2    States or Washington constitutions or that conflict with other state or federal laws.  Similarly,

3    cities may not adopt initiatives involving powers delegated by the Washington legislature to a

4    city council or other local board, rather than the city itself.  In addition, cities may not adopt

5    initiatives that are administrative, rather than legislative, in nature.

6         54.    <u>Invalid Initiatives Should Not Appear On The Ballot</u>.  Initiatives that exceed the

7    scope of the initiative power of a city in any manner are invalid and should not be placed on

8    the ballot.

9         55.    <u>The Ordinance Exceeds The Initiative Power of the City of SeaTac</u>.  The

10   proposed SeaTac Ordinance exceeds the initiative power of the City of SeaTac because the

11   City does not have the authority to enact laws via initiative that violate the "subject in title" and

12   "single subject" rules; that are administrative in nature rather than legislative; or that conflict

13   with or are preempted by federal or state law.

14        56.    <u>The Ordinance Violates The "Subject in Title" Rule</u>.  The Ordinance exceeds the

15   initiative power of the City of SeaTac because the City does not have the legislative authority

16   to enact a law that violates the "subject in the title" rule.  The "subject in the title" rule requires

17   that the subject of the measure must be expressed in its title.  RCW 35A.12.130; SMC

18   1.10.080; *see also* Wash. Const. Art. II, Sec.19.  "The purpose of this provision is to ensure

19   legislators and the public are on notice as to what the contents of the bill are. … This

20   requirement has particular importance in the context of initiatives since voters will often make

21   their decision based on the title of the act alone, without ever reading the body of it. …. A title

22   complies with this requirement if it gives notice to voters which would lead to an inquiry into

23   the body of the act or indicates the scope and purpose of the law to an inquiring mind."

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 21
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 64
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   *Citizens For Wildlife Mgmt. v. State*, 149 Wn.2d 622, 639 (2003).  The title of the proposed

2   Ordinance is "Ordinance Setting Minimum Employment Standards For Hospitality And

3   Transportation Industry Employers."  This title does not give sufficient notice to voters as to

4   the true contents of the proposed Ordinance.

5   57.   The Ordinance Violates the Single Subject Rule.  The Ordinance exceeds the

6   initiative power of the City of SeaTac because the City does not have the legislative authority

7   to enact a law that violates the requirement that an ordinance contain only one subject which

8   must be clearly expressed in the title.  RCW 35A.12.130; SMC 1.10.080; *see also* Wash.

9   Const. Art. II, Sec. 19.  The Ordinance exceeds the initiative power because the Ordinance

10  addresses at least seven, if not more, distinct and discreet subjects.  The several subjects

11  contained in the Ordinance do not have "rational unity" as required by state law.  In fact, the

12  many subjects of the Ordinance are typically addressed in separate legislation and enforced by

13  separate regulatory agencies, including some in state government and some in the federal

14  government.

15  58.   The Ordinance Involves Administrative Matters.  To be valid, a measure proposed

16  by initiative must be legislative (and not administrative) and within the municipality's power to

17  act.  An act is considered administrative if it is temporary and special, rather than permanent

18  and general.  The wage rate revisions and reporting requirements in § 7.45.050 (B)-(D) and the

19  requirement of the City Manager to formally request consent in Section 7.45.110 are

20  administrative and not legislative in nature.

21  59.   The Ordinance Conflicts with State Law Because it Purports to Eliminate The

22  Standing Requirement For Proceedings in State Court.  The Ordinance exceeds SeaTac's

23  initiative power because it unconstitutionally does away with Washington's requirements for

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 22
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 65
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    standing to sue and purports to change state law regarding standing by allowing "any person"

2    (broadly defined to include individuals, partnerships, trusts, associations "or any other legal or

3    commercial entity, whether domestic or foreign") "claiming a violation of this chapter" to

4    "bring an action" to enforce it, regardless of whether the person or entity was actually harmed

5    or threatened with harm.

6         59.a.  <u>The Ordinance Conflicts with State Law Because it Purports to Regulate Business</u>

7    <u>Operations at Sea-Tac Airport, Which is Subject to the Exclusive Jurisdiction of the Port of</u>

8    <u>Seattle</u>.  Pursuant to RCW 14.08.330, the Port has exclusive jurisdiction and control over the

9    Airport.  The Ordinance exceeds SeaTac's initiative power because it purports to impose

10   legislation beyond the jurisdiction of the City of SeaTac.  Sea-Tac Airport is subject only to the

11   jurisdiction of the Port, however, the primary focus of the Ordinance is to apply the new

12   provisions to employers at Sea-Tac Airport, and Petition Sponsors and proponents seek to

13   enforce the provisions against employers at Sea-Tac Airport.

14        60.  <u>Provisions of the Ordinance Conflict With Or Are Preempted By Federal Labor</u>

15   <u>Law</u>.  Plaintiff Alaska Airlines is a carrier by air covered by the Railway Labor Act, 45 U.S.C

16   §§ 151-188 ("RLA"), and employs approximately 8000 employees covered by collective

17   bargaining agreements with multiple labor unions negotiated under the RLA.  Numerous

18   vendors and contractors covered by the proposed Ordinance perform services at SeaTac Airport

19   for Alaska and other air carriers.  Most of these vendors and contractors are also covered by the

20   RLA.  Some of them are covered by the National Labor Relations Act, 29 U.S.C. §§ 151-169

21   ("NLRA").  Whether an employer is covered by the NLRA or the RLA generally is determined

22   by the National Mediation Board ("NMB") and/or the National Labor Relations Board

23   ("NLRB").  These federal agencies have complete and exclusive jurisdiction to address and

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 23
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 66
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1 resolve representation disputes. "That is to say, at least where representation disputes are

2 concerned, the National Mediation Board has been given complete jurisdiction under the

3 Railway Labor Act, which is coextensive with that of the National Labor Relations Board

4 under the National Labor Relations Act. The jurisdiction of both administrative bodies is

5 exclusive, with no power in the federal district courts to intrude." *AMFA v. United Airlines*,

6 406 F. Supp. 494, 506 (N. D. Cal. 1976). Air carriers who perform services for other air

7 carriers or other third parties and who would, as a result, be covered by the proposed Ordinance

8 are covered by the RLA.

9      60.a. Congress has regulated nearly every facet of the airline industry, having

10 recognized the vital role that the airline industry plays in interstate travel and the significance

11 of the industry (and interstate travel) to our national economy. Congress's reach over the

12 airline industry is so broad, and the federal interest so dominate, that it is reasonable to infer

13 that Congress intended to "preempt the field" and thereby disallow supplemental state and local

14 laws in the area of wages and working conditions.

15      61. SeaTac does not have the authority to adopt by initiative any legislation that

16 conflicts with federal law or that purports to regulate aspects of labor-management relations

17 governed by federal labor law. Legislation that interferes with the economic weapons

18 available to labor and management in reaching agreements is pre-empted by the NLRA or the

19 RLA, as applicable, because of its interference with the bargaining process.

20      62. By way of example and without limitation, Section 7.45.090 of the proposed

21 Ordinance ("Prohibiting Retaliation Against Covered Workers For Exercising Their Lawful

22 Rights") purports to make illegal any adverse action by an employer against an employee who

23 communicates with a union about alleged violations of the Ordinance. Section 7.45.100A

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 24
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 67
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1   creates remedies for violations of the proposed Ordinance.  The NLRA, regulates the rights of

2   employees to engage in protected concerted activity, such as communicating with each other or

3   with a union about wages, hours, and working conditions (all subjects of the Ordinance), and

4   an employer's ability to respond to such conduct by its employees. The National Labor

5   Relations Board has exclusive jurisdiction to determine if there has been any unlawful

6   retaliation against employees for exercising such rights.  Section 7.45.090 and .100A of the

7   Ordinance thus purport to provide a cause of action and remedies for conduct that arguably

8   constitutes an unfair labor practice under the NLRA.  Employees covered by the RLA have

9   similar protections although the enforcement mechanisms differ.  Such legislation (and any

10  action under the Ordinance to enforce it) is preempted by federal labor law.

11          63.     The Ordinance also would impose obligations on "Predecessor Employers" and

12  "Successor Employers," including with respect to notice to and retention of employees.  By

13  regulating successorship and specifically imposing an obligation on a "successor" to hire

14  "retention employees," the Ordinance requires that employers hire a particular worker or a

15  specific group of workers based on a group characteristic.  Both the NLRA and RLA define,

16  and govern the obligations of, predecessor and successor employers and preempt regulations,

17  such as the Ordinance, that attempt to regulate market forces with regard to labor supply and

18  collective bargaining and, in doing so, interfere with the free play of economic forces.

19          64.     The Ordinance interferes with employee and employer rights by coercing

20  employers to recognize unions and enter into collective bargaining agreements and by coercing

21  employees into union membership.  Among other things, the proposed Ordinance allows

22  employers to avoid the impermissible requirements imposed by the measure but only by

23  entering a "bona fide" collective bargaining agreement that waives the provisions of the

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 25
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 68
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    Ordinance in clear and unambiguous terms.  Individual employees are not allowed to reach

2    agreements to waive the provisions.  The Ordinance thus conflicts with or is preempted by

3    federal labor law because it interferes with employees' and employers' rights under Sections 7

4    and 8 of the NLRA and Section 2, Third, Fourth, and Seventh of the RLA.  *See Metropolitan*

5    *Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 755, 105 S.Ct. 2380, 2397 (1985); *American*

6    *Train Dispatchers v. Denver & Rio Grande Western Railroad Co.,* 614 F. Supp. 543 (D.

7    Colorado 1985).

8         65.    Section 7.45.060 of the proposed Ordinance would require the purchasers of

9    covered employers and successors to the agreements of covered employers to hire the

10   employees of the predecessor employer.  This provision is inconsistent with and/or preempted

11   by federal law because it has the effect of forcing the new provider or employer to become a

12   successor employer for purposes of federal labor law, with the attendant obligation to

13   recognize and bargain with the union representing the predecessor employer's employees.

14        66.    In addition, Section 7.45.100 of the proposed Ordinance gives to King County

15   Superior Court the responsibility of determining whether there exists a bona fide collective

16   bargaining agreement and whether such an agreement contains a "clear and unambiguous"

17   waiver of the Ordinance's provisions.  Thus, it conflicts with Section 301 of the NLRA, which

18   provides that only the NLRB or courts applying federal law have this authority, and under the

19   RLA, Congress has vested System Boards of Adjustment with the sole and exclusive

20   jurisdiction to construe and interpret collective bargaining agreements.  The RLA creates "a

21   comprehensive framework for the resolution of labor disputes" arising out of the interpretation

22   of CBAs in these industries.  *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562

23   (1987).

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 26
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 69
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1      67.   <u>The Ordinance Conflicts With The Airline Deregulation Act.</u>  Because the

2   Ordinance has the force and effect of law related to a price, route, or service of an air carrier, it

3   violates and is preempted by the Airline Deregulation Act of 1978 ("ADA"), codified at 49

4   U.S.C. § 41713(b).  The ADA prohibits a state or local government from enacting or enforcing

5   "a law, regulation, or other provision having the force and effect of law related to a price,

6   route, or service of an air carrier . . . ."  49 U.S.C. § 41713(b).  The Ordinance has the force and

7   effect of law related to a price, route, or service of an air carrier because it relates to multiple

8   core air carrier "services" provided to passengers, specifically, "curbside passenger check-in

9   services; baggage check services; wheelchair escort services; baggage handling; cargo

10  handling; rental luggage cart services"; "security services" and "customer service" (Section

11  7.45.010(M)), and relates to the "prices" that will be charged for such "services. "  The

12  Ordinance also relates to multiple additional "services" that are provided on behalf of airline

13  passengers, specifically, "aircraft interior cleaning; aircraft carpet cleaning; aircraft washing

14  and cleaning; aircraft water or lavatory services; aircraft fueling; ground transportation

15  management"; "janitorial and custodial services"; and "facility maintenance services" (Section

16  7.45.010(M)), and relates to the "prices" that will be charged for such "services."  The

17  Ordinance also improperly requires payment of service charges directly to "Transportation

18  Workers."  Section 7.45.040(A).  That term is defined in the Ordinance to mean any

19  nonmanagerial, nonsupervisory individual employed by a "Transportation Employer," which is

20  defined to include to include a company operating "curbside passenger check-in services;

21  baggage check services, wheelchair escort services, [and] baggage handling. . . . "  The fact

22  that Section 7.45.010(M) of the Ordinance excludes from its definition of a covered

23  Transportation Employer "a certified air carrier performing services for itself," does not avoid

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 27
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 70
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   the fact that the ADA preempts the Ordinance.  Air carriers customarily and routinely use third

2   party contractors – which are not certified air carriers – to provide many if not all of the air

3   carrier "services" covered by the Ordinance, and the Ordinance does not exempt such third

4   party contractors from its requirements.  Importantly, ADA preemption applies not only

5   directly to air carriers but also to third party contractors retained by air carriers to provide

6   "services" to and on behalf of air carrier passengers.  The entity directly affected by the local

7   law need not be an air carrier so long as the law relates to an air carrier's prices, routes or

8   services.  In addition, the Ordinance also does not exempt certified air carriers when they

9   perform the covered transportation support services for other airlines, as is customary in the

10  industry.  Thus certified air carriers would be covered by the proposed Ordinance, at least with

11  respect to some of their operations.  The Ordinance relates to air carrier "services" and "prices"

12  in a manner that is not tenuous, remote or peripheral.  To the contrary, the monetary

13  compensation requirements mandated by the Ordinance will directly affect air carriers in terms

14  of the amount of money they must pay to third party contractors and other air carriers for core

15  passenger services.  Under the ADA, market forces, rather than local laws, are supposed to

16  determine the level and scope of services provided to and on behalf of passengers by air

17  carriers – or their third party contractors – and the amount that the air carriers must incur or

18  spend for such services.   In addition, the Ordinance would improperly and unlawfully penalize

19  air carriers for their decision to use third party contractors or other air carriers to provide

20  services to or on behalf of their passengers.  Furthermore, if air carriers are required to pay

21  materially more for such core services they will need to reflect the additional costs in the prices

22  charged to passengers.

23

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 28
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 71
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

68.     The Ordinance Violates The Contract Clauses of the U.S. and Washington State Constitutions.  The Ordinance does not set general terms of employment or set minimum employment standards.  It exceeds SeaTac's initiative power in part because it substantially impairs contract rights or contractual relationships in violation of the Contract Clause of the U.S. Constitution and art. 1, sec. 23 of the State Constitution.  The Ordinance requires that employers retain "qualified Retention employees" for up to three months following the assumption of a contract.  The Ordinance also increases labor costs by up to 63% and, in doing so, substantially impairs employers' contractual obligation with a separate municipal corporation, the Port of Seattle, to offer "street pricing" to customers in the airport.  Rather than set general terms and conditions of employment or minimum employment standards, the successorship provision of the Ordinance, in Section 7.45.060, require that an employer hire and retain specific employees solely because that employer assumed a service contract, regardless of the needs of the business.  These provisions impose wholly unanticipated burdens and obligations on the parties to those agreements.

68.a.   The Ordinance Violates The Commerce Clause of the U.S. Constitution.    The Ordinance exceeds SeaTac's initiative power in part because it impairs commerce in violation of the "dormant" Commerce Clause of the U.S. Constitution.    Article 1, section 8, clause 3, of the U.S. Constitution empowers Congress to "regulate Commerce with foreign Nations, and among the several States."  As interpreted by the courts, this clause "not only . . . grant[s] legislative power to Congress, but also impliedly . . . limit[s] the power of State and local governments to enact laws affecting foreign and interstate commerce."  *Air Trans v. City of San Francisco*, 992 F. Supp. 1149, 1161 (N.D. Cal. 1998) (*citing Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1, 109 S. Ct. 2491, 105 L. Ed. 2d 275, (1989)).  This "dormant" Commerce Clause

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 29
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 72
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    impliedly limits the power of State and local governments to enact laws affecting foreign and

2    interstate commerce.  It operates absent federal legislation and precludes State and local laws

3    from having extraterritorial effects when a national, uniform economic policy is required.  A

4    local statute may be unconstitutional because it impermissibly impacts interstate commerce

5    even when Congress has not acted.  The Ordinance at issue here will directly or incidentally

6    burden the free flow of interstate commerce because the increased labor costs associated with

7    the Ordinance will affect, among other things, prices of interstate travel, interstate services

8    provided, and interstate routes offered by Plaintiff Alaska Airlines and other similar air carriers.

9         68.b.  Provisions of the Ordinance Are Unconstitutionally Vague.  The Ordinance is

10   void for vagueness because it fails to provide a person fair notice of what is prohibited and/or

11   required and could authorize or encourage serious discriminatory enforcement.  By way of

12   example, section 7.45.090 prohibiting retaliation against Covered Workers for exercising their

13   rights purports to also prohibit changes to wages or benefits "in response to this Chapter or the

14   *pendency thereof*." (emphasis added).  This provision is unconstitutional due to vagueness.

15   Employers have no notice as to when the provisions apply, and it could be interpreted as

16   applying before the measure is enacted.  In section 7.45.040, the tip provisions are vague and

17   internally inconsistent.  On the one hand, in (A) service charges or tips received by employees

18   of a Hospitality Employer *shall be retained by or paid to* the workers who perform the

19   services, but in (B) the amounts received from tips and service charges *shall be allocated*

20   *among the workers who performed these services equitably*.  This provision is

21   unconstitutionally vague and does not provide notice as to how such monies should be

22   distributed.  The definitions of covered employers are also vague, and with respect to the

23

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 30
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 73
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  operations of some employers it will be impossible to determine if those operations are covered

2  by the Ordinance or not.

3    69.  <u>Offending Provisions Are Not Severable.</u>  The Ordinance contains a severability

4  clause, but the provisions of the Ordinance that exceed the initiative power of the City of

5  SeaTac or are otherwise invalid are vital to the Ordinance's intended purposes.  The Court

6  cannot sever the offending provisions of the Ordinance from the non-offending provisions

7  without rendering the Ordinance incapable of accomplishing the legislative purposes.

8    **B.     Claims for Relief In Part Two**

9    70.  In Part Two of this Application and Complaint, Plaintiffs seek a Declaratory

10  Judgment that the proposed Ordinance exceeds the initiative power of the City of SeaTac and a

11  Writ of Prohibition or an injunction prohibiting the City and the City Clerk from taking any

12  further action to forward the proposed ordinance to the City Council or to King County or

13  taking any other action to place the measure on the ballot for the November 2013 election.

14    **1.     Declaratory Judgment**

15    71.  Pursuant to the Washington Declaratory Judgment Act, RCW 7.24 et seq., this

16  Court may declare the validity of an Ordinance or a proposed Ordinance.

17    72.  The matter is ripe for declaratory relief because a dispute exists as to the validity

18  of the Ordinance.

19    73.  A declaratory judgment action is proper to determine whether the Ordinance

20  exceeds the initiative power of the City of SeaTac and thus whether it may be submitted to the

21  qualified electors in the November 2013 election.

22    74.  The Court should enter a judgment that the Ordinance exceeds the initiative

23  power of the City of SeaTac for the reasons set out above (including that it purports to legislate

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 31
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 74
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

at the Sea-Tac Airport, which is beyond the jurisdiction of the City of SeaTac), as well as such other and further relief as may follow from the entry of such a declaratory judgment.

### 2. Writ of Prohibition

75. Under RCW 7.16.290, this Court has the authority to issue a Writ of Prohibition to arrest the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person.

76. As explained above, the City of SeaTac has no authority or jurisdiction to present for possible adoption by voters a proposed Ordinance that exceeds the City's initiative power.

77. Because the proposed Ordinance exceeds the City's power of initiative and because there is not a plain, speedy, and adequate remedy in the ordinary course of law, the Court should issue a Writ of Prohibition prohibiting the City of SeaTac and the City Clerk from taking any further steps to place the proposed Ordinance before the City Council for action or any other steps to place the proposed Ordinance on the November 5, 2013 ballot.

### 3. Injunction

78. Pursuant to RCW 7.40 *et seq*. the Court has the power to grant injunctive relief. The Court may grant an injunction at the time the action is commenced or at any time afterwards.

79. The Ordinance has been deemed sufficient by the City Clerk to be presented to the City Council and/or placed on the November 2013 ballot.

80. Only a valid initiative may be placed on a ballot for a local election. An initiative that exceeds the power of the municipality is not a valid initiative as a matter of Washington law and may not be placed on an election ballot.

81. For the reasons described in the preceding paragraphs of this complaint, Plaintiffs have a well-grounded fear of the immediate invasion of their rights should the Ordinance be

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 32
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 75
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   presented to the City Council and/or placed on the November 2013 ballot.  Additionally, the

2   Ordinance seeks to alter protections afforded by the United States and Washington

3   constitutions, as well as state and federal law.  If enacted by the City of SeaTac, Plaintiffs

4   would be subject to the time and cost of pursuing post-election litigation.  Plaintiffs will suffer

5   actual and substantial injuries if an injunction is not entered preventing the measures from

6   appearing on the ballot.

7          82.    A preliminary and permanent injunction precluding presentation of the Ordinance

8   to the City Council and/or placement of the Ordinance on the November 5, 2013, ballot is also

9   proper (1) because the presence of invalid initiatives steals attention, time, and money from

10  other valid propositions on the same ballot; (2) to avoid the cost of placing before the voters

11  measures that would be unenforceable if enacted; (3) to avoid the public confusion that would

12  otherwise arise if the Initiatives are enacted and then later found to be invalid; (4) to eliminate

13  potential negative impacts the Ordinance may have on the City of SeaTac's economic

14  development efforts between now and the November 5, 2013 election; and (5) protect the

15  taxpayers of the City of SeaTac and King County from having to pay for multiple lawsuits

16  likely to arise post-election as the result of the enactment of an unlawful ordinance.

17         83.    If the Court does not enter the requested Writ of Prohibition, an injunction is the

18  only other possible remedy to prevent the placement of an invalid initiative on the November

19  5, 2013, ballot.  The court should enter an injunction prohibiting the City and City Clerk from

20  taking any further steps to place the proposed Ordinance before the City Council for action or

21  any other steps to place the proposed Ordinance on the November 5, 2013 ballot.

22         83.a.    For the reasons described in the preceding paragraphs of this complaint, Plaintiffs

23  have a well-grounded fear of the immediate invasion of their rights should the provisions of the

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 33
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 76
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   Ordinance be enforced.  Additionally, the Ordinance seeks to alter protections afforded by the

2   United States and Washington constitutions, as well as state and federal law.  Plaintiffs will

3   suffer actual and substantial injuries if an injunction is not entered preventing the City or any

4   other party from enforcing provisions of the illegal measure.  This Court should enter a

5   permanent injunction prohibiting the City or any other party from taking any steps to enforce

6   the provisions of the Ordinance.  The Court should also enter a preliminary injunction

7   prohibiting the City or any other party from taking any steps to enforce the provisions of the

8   Ordinance pending final resolution of the instant action.

9                                **VI.    PRAYER FOR RELIEF**

10          Based on the allegations set out above, Plaintiffs respectfully request the following relief:

11   **Part One:**

12          1.      For issuance of a Writ of Review reversing the determination by the City Clerk

13   that the Petition is supported by a sufficient number of valid signatures;

14          2.      For issuance of a Writ of Prohibition forbidding the City and the City Clerk from

15   taking any further action with regard to the Ordinance, including, but not limited to, taking any

16   action to place the proposed Ordinance before the City Council or for action or any other steps to

17   forward the proposed Ordinance to King County for placement on a ballot, until after the City

18   Clerk (a) undertakes the required substantive review of the legality of the title, text, and content

19   of the proposed Ordinance and (b) determines whether the petition has been was validly signed

20   by the number of registered voters of the City equal to at least fifteen percent (15%) of the total

21   number of names of persons listed as registered voters within the City on the day of the last

22   preceding City general election (valid signatures not to include signatures that appear without a

23   date or an address, signatures that appear without a date written by the person actually signing,

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 34
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 77
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  signatures that appear on petitions that did not have a copy of the Ordinance attached, or

2  signatures of persons signing multiple times).

3      3.    For issuance of a Writ of Mandate compelling the City and City Clerk to do the

4  following, as required by SMC 1.10.140, prior to taking any further action on the petition and

5  proposed Ordinance:

6      a.    Conduct a review of the sufficiency of the signatures in support of the

7  petition and determine whether the petition is supported by sufficient valid signatures (not

8  including signatures that appear without a date or an address, signatures that appear without a

9  date written by the person actually signing, signatures that appear on petitions that did not have a

10 copy of the Ordinance attached, or signatures of persons signing multiple times);

11     b.    Conduct a substantive review of the legality of the title, text, and content

12 of the proposed Ordinance and then determine whether the title, text, and content of the proposed

13 Ordinance are legal and sufficient;

14     c.    Issue a Certificate of Sufficiency or a Certificate of Insufficiency based on

15 these reviews; and

16     d.    Convene the Petition Review Board to (a) conduct a hearing to determine

17 the legality and sufficiency of the signatures supporting the Petition and the legality and

18 sufficiency of the title, text, and content of the proposed Ordinance and (b) issue a Final

19 Certificate of Sufficiency or a Final Certificate of Insufficiency.

20 **Part Two:**

21     4.    For a judgment declaring that the Ordinance is beyond the scope of the initiative

22 power of the City of SeaTac, as well as such other and further relief as may follow from the entry

23 of such a declaratory judgment;

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 35
DWT 22710780v3 0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 78
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    5.    For a Writ of Prohibition prohibiting the City of SeaTac and the City Clerk from

2  taking any further steps to place the proposed Ordinance before the City Council for action or

3  any other steps to forward the proposed Ordinance to King County for placement on a ballot for

4  any election.

5    6.    For a permanent injunction prohibiting the City of SeaTac and the City Clerk

6  from taking any further steps to place the proposed Ordinance before the City Council for action

7  or any other steps to forward the proposed Ordinance to King County for placement on a ballot

8  for any election;

9    6.a.    For an injunction prohibiting the City of SeaTac or any other party (or anyone

10  acting in concert with a party) from taking any steps to enforce or apply the provisions of the

11  Ordinance, including but not limited to adopting auditing procedures, investigating alleged

12  violations, or initiating legal or other action pending final resolution of this action.

13    7.    For judgment against the City for Plaintiffs' costs and attorneys' fees pursuant to

14  RCW 7.16.260; and

15    8.    For such other relief that the Court deems appropriate.

16    DATED this 8th day of November, 2013.

17                          Davis Wright Tremaine LLP
                          Attorneys for Alaska Airlines, Inc. and Washington
18                          Restaurant Association

19

20                          By s/Harry J. F. Korrell
                             Harry J. F. Korrell, WSBA #23173
21

22

23

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 36
DWT.22710780v3.0017572-000176
ATTACHMENTS TO NOTICE OF REMOVAL - 79
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

2
               Pacific Alliance Law, PLLC
               Attorneys for Filo Foods, LLC and BF Foods, LLC

3

4

               By <u>s/Cecilia Cordova via approval</u>
5
                 Cecilia Cordova, WSBA #30095

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  - 37
ATTACHMENTS TO NOTICE OF REMOVAL - 80
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# DECLARATION OF SERVICE

The undersigned declares under the penalty of perjury under the laws of the State of Washington that I am now and at all times herein mentioned a citizen of the United States, a resident of the state of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On this date I caused to be served in the manner noted below a copy of on the following:

**VIA EMAIL and U.S. MAIL**
Wayne D. Tanaka, WSBA # 6303
Ogden Murphy Wallace P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, WA 98164

**VIA EMAIL and U.S. MAIL**
Mary Mirante Bartolo, WSBA # 20546
Mark Johnsen, WSBA # 28194
City of SeaTac Attorney's Office
4800 South 188th Street
SeaTac, WA 98188-8605

**VIA EMAIL and U.S. MAIL**
Laura Ewan
Dmitri Iglitzin
Schwerin Campbell Barnard Iglitzin & Lavitt
18 W. Mercer Street, Suite 400
Seattle, WA 98119

**VIA EMAIL and MESSENGER**
Craig Watson
General Counsel for the Port of Seattle
2711 Alaskan Way (Pier 69)
Seattle, WA 98121

Dated this 8th day of November, 2013.

_Anita A. Miller_
Anita A. Miller

AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 38
ATTACHMENTS TO NOTICE OF REMOVAL - 81
Case No.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# EXHIBIT A

## RESOLUTION NO.  13–010

A RESOLUTION of the City Council of the City of SeaTac, Washington calling for a special election to be held concurrent with the general election of November 5, 2013, to place before the qualified electors of the City the proposition of whether an Ordinance entitled "Ordinance Setting Minimum Employment Standards for Hospitality and Transportation Industry Employers" be adopted; submitting this call to the King County Department of Elections for a formal order calling for an election to be held at the November 5, 2010 General Election, and appointing committee members to prepare for and against statements for the Local Voters' Pamphlet.

**WHEREAS,** an Initiative petition, signed by the statutorily required number of registered voters of the City, has been submitted to the City, requesting that the City Council adopt an Ordinance entitled "Ordinance Setting Minimum Employment Standards for Hospitality and Transportation Industry Employers" (See Ordinance which is attached as Exhibit "A"); and

**WHEREAS,** the King County Department of Elections verified the number and correctness of signatures on the petition and issued a Certificate of Sufficiency dated June 20, 2013; and

**WHEREAS,** City Clerk Kristina Gregg issued a Certificate of Sufficiency dated June 28, 2013 and issued a final Certificate of Sufficiency dated July 23, 2013; and

**WHEREAS,** the City Council has declined to adopt the proposed Ordinance as written, and thus is required to request an election on whether the proposed Ordinance be adopted; and

**WHEREAS,** the City Council has determined that this measure should appear in the Local Voters' Pamphlet, and thus it is appropriate to appoint committee members to prepare for and against statements for the Local Voters' Pamphlet;

ATTACHMENTS TO NOTICE OF REMOVAL - 83
Case No.

NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF SEATAC, WASHINGTON HEREBY RESOLVES as follows:

**Section 1.**    The City Council finds it necessary to call a special election to be held in the City at the time of the General Election of November 5, 2013, on the proposition of whether an Ordinance entitled "Ordinance Setting Minimum Employment Standards for Hospitality and Transportation Industry Employers" should be adopted.

**Section 2.**    A City election is hereby called for November 5, 2013, to place before the qualified electors of the City the following proposition:

## PROPOSITION NO. 1

### BALLOT TITLE

Proposition No. 1 concerns labor standards for certain employers.

This Ordinance requires certain hospitality and transportation employers to pay specified employees an hourly minimum wage of $15.00, adjusted annually for inflation, and pay for safe and sick leave of 1 hour per 40 hours worked. Tips shall be retained by workers who performed the services. Employers must offer additional hours or employment to existing employees before hiring from outside.  SeaTac must establish a monitoring process and other labor standards are established.

Should this Ordinance be enacted into law?

Yes . . . . . . . . . . . .   ☐

No . . . . . . . . . . . .   ☐

**Section 3.**    King County Department of Elections is hereby requested to issue a formal order calling for an election to be held in the City of SeaTac on November 5, 2013 to place the foregoing proposition before the qualified electors of the City.

**Section 4.**    The following people are appointed to prepare for and against statements for the Local Voters' Pamphlet.

Page - 2
ATTACHMENTS TO NOTICE OF REMOVAL - 84
Case No.

FOR Proposition No. 1:
     Rev. Jan Bolerjack
     Judy Volkers
     Sili Savusa

AGAINST Proposition No. 1:
     Erin Sitterley
     LeeAnn Subelbia
     Mike West

**Section 5.**    The City Clerk is authorized and directed to file a certified copy of this Resolution, together with contact information for all persons listed in Section 4 of this Resolution, and the Declaration of the City Attorney stating the ballot title and explanatory statement, with the King County Department of Elections upon passage of this Resolution.

**PASSED** this _23rd_ day of _July_, 2013 and signed in authentication thereof on this _23rd_ day of _July_, 2013.

**CITY OF SEATAC**

Tony Anderson, Mayor

ATTEST:

Kristina Gregg, City Clerk

Approved as to Form:

Mary Mirante Bartolo, City Attorney

[Initiative Setting Minimum Employment Standards]

CERTIFICATE Deputy
I, Zenetta N. Young, City Clerk of the City of Sea Tac, do certify that this is a true and correct copy of the original on file with the City.
DATED this 26th day of July, 20 13.

Deputy City Clerk

ATTACHMENTS TO NOTICE OF REMOVAL - 85
Case No.

ORDINANCE SETTING MINIMUM EMPLOYMENT STANDARDS FOR HOSPITALITY
AND TRANSPORTATION INDUSTRY EMPLOYERS

**Section 1. Findings.** The following measures are necessary in order to ensure that, to the extent reasonably practicable, all people employed in the hospitality and transportation industries in SeaTac have good wages, job security and paid sick and safe time.

**Section 2.** That a new Chapter, 7.45, be added to the SeaTac Municipal Code to read as follows:

**7.45    MINIMUM EMPLOYMENT STANDARDS FOR HOSPITALITY AND
TRANSPORTATION INDUSTRY EMPLOYERS**

**7.45.010      Definitions**

As used in this Chapter, the following terms shall have the following meaning:

A.      *"City"* means the City of SeaTac.

B.      *"Compensation"* includes any wages, tips, bonuses, and other payments reported as taxable income from the employment by or for a Covered Worker.

C.      *"Covered Worker"* means any individual who is either a Hospitality Worker or a Transportation Worker.

D.      *"Hospitality Employer"* means a person who operates within the City any Hotel that has one hundred (100) or more guest rooms and thirty (30) or more workers or who operates any institutional foodservice or retail operation employing ten (10) or more nonmanagerial, nonsupervisory employees. This shall include any person who employs others providing services for customers on the aforementioned premises, such as a temporary agency or subcontractor.

E.      *"Hospitality Worker"* means any nonmanagerial, nonsupervisory individual employed by a Hospitality Employer.

F.      *"Hotel"* means a building that is used for temporary lodging and other related services for the public, and also includes any contracted, leased, or sublet premises connected to or operated in conjunction with such building's purpose (such as a restaurant, bar or spa) or providing services at such building.

G.      *"Institutional foodservice or retail"* is defined as foodservice or retail provided in public facilities, corporate cafeterias, conference centers and meeting facilities, but does not include preparation of food or beverage to be served in-flight by an airline. Restaurants or retail

operations that are not located within a hotel, public facility, corporate cafeteria, conference facility or meeting facility are not considered a hospitality employer for the purpose of this Chapter.

H.     "*Person*" means an individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, business trust, estate, trust, association, joint venture, or any other legal or commercial entity, whether domestic or foreign, other than a government agency.

I.     "*Predecessor Employer*" means the Hospitality or Transportation Employer that provided substantially similar services within the City prior to the Successor Employer.

J.     "*Retention Employee*" means any Covered Worker who:

    1) was employed by a Predecessor Employer for at least 30 workdays; and

    2) was either:

        a) laid off or discharged for lack of work due to the closure or reduction of a Hospitality or Transportation Employer's operation during the preceding two years; or

        b) is reasonably identifiable as a worker who is going to lose his/her job due to the closure or reduction of the Hospitality or Transportation Employer's operation within the next 6 months.

K.     "*Service charge*" is defined as set forth in RCW 49.46.160(2)(c).

L.     "*Successor Employer*" means the new Hospitality or Transportation Employer that succeeds the Predecessor Employer in the provision of substantially similar services within the City.

M.     "*Transportation Employer*" means:

    1) A person, excluding a certificated air carrier performing services for itself, who:

        a) operates or provides within the City any of the following: any curbside passenger check-in services; baggage check services; wheelchair escort services; baggage handling; cargo handling; rental luggage cart services; aircraft interior cleaning; aircraft carpet cleaning; aircraft washing and cleaning; aviation ground support equipment washing and cleaning; aircraft water or lavatory services; aircraft fueling; ground transportation management; or any janitorial and custodial services, facility maintenance services, security services, or customer service

performed in any facility where any of the services listed in this paragraph are also performed; and

b) employs twenty-five (25) or more nonmanagerial, nonsupervisory employees in the performance of that service.

2) A transportation employer also includes any person who:

a) operates or provides rental car services utilizing or operating a fleet of more than one hundred (100) cars; shuttle transportation utilizing or operating a fleet of more than ten (10) vans or buses; or parking lot management controlling more than one hundred (100) parking spaces; and

b) employs twenty-five (25) or more nonmanagerial, nonsupervisory employees in the performance of that operation.

N.    *"Transportation Worker"* means any nonmanagerial, nonsupervisory individual employed by a Transportation Employer.

O.    *"Tips"* mean any tip, gratuity, money, or part of any tip, gratuity, or money that has been paid or given to or left for a Covered Worker by customers over and above the actual amount due for services rendered or for goods, food, drink, or articles sold or served to the customer.


**7.45.020      Paid Leave For Sick and Safe Time**

Each Hospitality or Transportation Employer shall pay every Covered Worker paid leave for sick and safe time out of the employer's general assets as follows:

A.    A Covered Worker shall accrue at least one hour of paid sick and safe time for every 40 hours worked as an employee of a Hospitality Employer or Transportation Employer. The Covered Worker is entitled to use any accrued hours of compensated time as soon as those hours have accrued.

B.    The Covered Worker need not present certification of illness to claim compensated sick and safe time, provided that such Covered Worker has accrued the requested hours of compensated time at the time of the request. A Covered Worker shall be paid his or her normal hourly compensation for each compensated hour off.

C.    The Covered Worker shall not be disciplined or retaliated against for use of accrued paid sick and safe time. This includes a prohibition on any absence control policy that counts earned sick and safe time as an absence that may lead to or result in discipline against the Covered Worker.

D.      If any Covered Worker has not utilized all of his or her accrued compensated time by the end of any calendar year, the Hospitality Employer or Transportation Employer shall pay this worker a lump sum payment at the end of the calendar year equivalent to the compensation due for any unused compensated time.

E.      Accrued paid sick time shall be provided to a Covered Worker by a Hospitality Employer or Transportation Employer for the following reasons:

      1) An absence resulting from a Covered Worker's mental or physical illness, injury or health condition; to accommodate the Covered Worker's need for medical diagnosis care, or treatment of a mental or physical illness, injury or health condition; or a Covered Worker's need for preventive medical care;

      2) To allow the Covered Worker to provide care of a family member with a mental or physical illness, injury or health condition; care of a family member who needs medical diagnosis, care, or treatment of a mental or physical illness, injury or health condition; or care of a family member who needs preventive medical care.

F.      Accrued paid safe time shall be provided to a Covered Worker by a Hospitality Employer or Transportation Employer for the following reasons:

      1) When the Covered Worker's place of business has been closed by order of a public official to limit exposure to an infectious agent, biological toxin or hazardous material;

      2) To accommodate the Covered Worker's need to care for a child whose school or place of care has been closed by order of a public official for such a reason;

      3) For any of the following reasons related to domestic violence, sexual assault, or stalking, as set forth in RCW 49.76.030:

            a) To enable the Covered Worker to seek legal or law enforcement assistance or remedies to ensure the health and safety of the Covered Worker or the Covered Worker's family members including, but not limited to, preparing for, or participating in, any civil or criminal legal proceeding related to or derived from domestic violence, sexual assault, or stalking;

            b) To enable the Covered Worker to seek treatment by a health care provider for physical or mental injuries caused by domestic violence, sexual assault, or stalking, or to attend to health care treatment for a victim who is the Covered Worker's family member;

c) To enable the Covered Worker to obtain, or assist a family member in obtaining, services from a domestic violence shelter, rape crisis center, or other social services program for relief from domestic violence, sexual assault, or stalking;

d) To enable the Covered Worker to obtain, or assist a family member in obtaining, mental health counseling related to an incident of domestic violence, sexual assault, or stalking, in which the Covered Worker or the Covered Worker's family member was a victim of domestic violence, sexual assault, or stalking; or

e) To enable the Covered Worker to participate in safety planning, temporarily or permanently relocate, or take other actions to increase the safety of the Covered Worker or Covered Worker's family members from future domestic violence, sexual assault, or stalking.

**7.45.030     Promoting Full-Time Employment**

If a Hospitality or Transportation Employer has additional hours of work to provide in job positions held by Covered Workers, then it shall offer those hours of work first to existing qualified part-time employees before hiring additional part-time employees or subcontractors.

**7.45.040  Require That Service Charges and Tips Go To Those Performing The Service**

A.     Any service charge imposed on customers of, or tips received by employees of, a Hospitality Employer shall be retained by or paid to the nonmanagerial, nonsupervisory Hospitality or Transportation Workers who perform services for the customers from whom the tips are received or the service charges are collected.

B.     The amounts received from tips or service charges shall be allocated among the workers who performed these services equitably; and specifically:

1) Amounts collected for banquets or catered meetings shall be paid to the worker(s) who actually work with the guests at the banquet or catered meeting; and

2) Amounts collected for room service shall be paid to the worker(s) who actually deliver food and beverage associated with the charge; and

3) Amounts collected for porterage service shall be paid to the worker(s) who actually carry the baggage associated with the charge.

**7.45.050    Establishing A Living Wage For Hospitality Workers and Transportation Workers**

A.      Each Hospitality Employer and Transportation Employer shall pay Covered Workers a living wage of not less than the hourly rates set forth in this section. The rate upon enactment shall be fifteen dollars ($15.00) per hour worked.

B.      On January 1, 2015, and on each following January 1, this living wage shall be adjusted to maintain employee purchasing power by increasing the current year's wage rate by the rate of inflation. The increase in the living wage rate shall be calculated to the nearest cent using the consumer price index for urban wage earners and clerical workers, CPI-W, or a successor index, for the twelve months prior to each September 1st as calculated by the United States department of labor.  The declaration of the Washington State Department of Labor and Industries each September 30 regarding the rate by which Washington State's minimum wage rate is to be increased effective the following January 1, pursuant to RCW 49.46.020(4)(b), shall be the authoritative determination of the rate of increase to be applied for purposes of this provision.

C.      The City Manager shall publish a bulletin by October 15 of each year announcing the adjusted rates.  Such bulletin will be made available to all Hospitality Employers and Transportation Employers and to any other person who has filed with the City Manager a request to receive such notice but lack of notice shall not excuse noncompliance with this section.

D.      Each Hospitality Employer and Transportation Employer shall provide written notification of the rate adjustments to each of its workers and make the necessary payroll adjustments by January 1 following the publication of the bulletin. Tips, gratuities, service charges and commissions shall not be credited as being any part of or be offset against the wage rates required by this Chapter.

**7.45.060    Setting Additional Labor Standards for City Hospitality Workers and Transportation Workers**

A.      <u>Notice to Employees</u>.   No less than 60 days prior to the termination of a Predecessor Employer's contract, the Predecessor Employer shall notify all Retention Employees in writing that they have been placed on a qualified displaced worker list and that the Successor Employer may be required to offer him/her continued employment. The notice shall include, if known, the name, address, and contact information of the Successor Employer.  A copy of this notice, along with a copy of the qualified displaced worker list, shall also be sent to the City Manager.

B.      <u>Retention Offer</u>.  Except as otherwise provided herein, the Successor Employer shall offer employment to all qualified Retention Employees. A Successor Employer who is a Hospitality Employer shall, before hiring off the street or transferring workers from elsewhere, offer employment to all qualified retention employees of any predecessor employer that has

provided similar services at the same facility. If the Successor Employer does not have enough positions available for all qualified Retention Employees, the Successor Employer shall hire the Retention Employees by seniority within each job classification. For any additional positions which become available during the initial ninety-day period of the new contract, the Successor Employer will hire qualified Retention Employees by seniority within each job classification.

C.     Retention Period.   A Successor Employer shall not discharge a Retention Employee without just cause during the initial ninety-day period of his/her employment.

D.     An employee is "qualified" within the meaning of this Section if he/she has performed similar work in the past (and was not discharged for incompetence) or can reasonably be trained for the duties of a position through an amount of training not in excess of the training that has been provided by the employer to workers hired off the street.

E.     The requirements of this Chapter shall not be construed to require any Hospitality Employer or Transportation Employer to offer overtime work paid at a premium rate nor to constrain any Hospitality Employer or Transportation Employer from offering such work.

**7.45.070      Employee Work Environment Reporting Requirement**

A.     Hospitality Employers and Transportation Employers shall retain records documenting hours worked, paid sick and safe time taken by Covered Workers, and wages and benefits provided to each such employee, for a period of two years, and shall allow the City Manager or designee access to such records, with appropriate notice and at a mutually agreeable time, to investigate potential violations and to monitor compliance with the requirements of this Chapter.

B.     Hospitality Employers and Transportation Employers shall not be required to modify their recordkeeping policies to comply with this Chapter, as long as records reasonably indicate the hours worked by Covered Workers, accrued paid sick and safe time, paid sick and safe time taken, and the wages and benefits provided to each such Covered Worker. When an issue arises as to the amount of accrued paid sick time and/or paid safe time available to a Covered Worker under this chapter, if the Hospitality Employers and Transportation Employers does not maintain or retain adequate records documenting hours worked by the Covered Worker and paid sick and safe time taken by the Covered Worker, it shall be presumed that the Hospitality Employers and Transportation Employers has violated this chapter.

C.     Records and documents relating to medical certifications, re-certifications or medical histories of Covered Worker or Covered Workers' family members, created for purposes of this chapter, are required to be maintained as confidential medical records in separate files/records from the usual personnel files. If the Americans with Disabilities Act (ADA) and/or the Washington Law Against Discrimination (WLAD) apply, then these records must comply with the ADA and WLAD confidentiality requirements.

**7.45.080      Waivers**

The provisions of this Chapter may not be waived by agreement between an individual Covered Worker and a Hospitality or Transportation Employer. All of the provisions of this Chapter, or any part hereof, including the employee work environment reporting requirement set forth herein, may be waived in a bona fide collective bargaining agreement, but only if the waiver is explicitly set forth in such agreement in clear and unambiguous terms. Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute, or be permitted, as a waiver of all or any part of the provisions of this chapter.

**7.45.090      Prohibiting Retaliation Against Covered Workers For Exercising Their Lawful Rights**

A.      It shall be a violation for a Hospitality Employer or Transportation Employer or any other person to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right protected under this Chapter.

B.      It shall be a violation for a Hospitality Employer or Transportation Employer to take adverse action or to discriminate against a Covered Worker because the Covered Worker has exercised in good faith the rights protected under this Chapter.  Such rights include but are not limited to the right to file a complaint with any entity or agency about any Hospitality Employer's or Transportation Employer's alleged violation of this chapter; the right to inform his or her employer, union or other organization and/or legal counsel about a Hospitality Employer's or Transportation Employer's alleged violation of this section; the right to cooperate in any investigation of alleged violations of this chapter; the right to oppose any policy, practice, or act that is unlawful under this section; and the right to inform other Covered Workers of their rights under this section. No Covered Worker's compensation or benefits may be reduced in response to this Chapter or the pendency thereof.

C.      The protections afforded under subsection B shall apply to any person who mistakenly but in good faith alleges violations of this Chapter.

**7.45.100      Enforcement of Chapter**

A.      Any person claiming violation of this chapter may bring an action against the employer in King County Superior Court to enforce the provisions of this Chapter and shall be entitled to all remedies available at law or in equity appropriate to remedy any violation of this chapter, including but not limited to lost compensation for all Covered Workers impacted by the violation(s), damages, reinstatement and injunctive relief. A plaintiff who prevails in any action to enforce this Chapter shall be awarded his or her reasonable attorney's fees and expenses.

B.     The City shall adopt auditing procedures sufficient to monitor and ensure compliance by Hospitality Employers and Transportation Employers with the requirements of this Chapter. Complaints that any provision of this Chapter has been violated may also be presented to the City Attorney, who is hereby authorized to investigate and, if it deems appropriate, initiate legal or other action to remedy any violation of this chapter; however, the City Attorney is not obligated to expend any funds or resources in the pursuit of such a remedy.

C.     Nothing herein shall be construed to preclude existing remedies for enforcement of Municipal Code Chapters.

### 7.45.110     Exceptions

The requirements of this Chapter shall not apply where and to the extent that state or federal law or regulations preclude their applicability.  To the extent that state or federal law or regulations require the consent of another legal entity, such as a municipality, port district, or county, prior to becoming effective, the City Manager is directed to formally and publicly request that such consent be given.

**Section 3**. That the effective date of this Ordinance shall be January 1, 2014.

**Section 4**. The Code Reviser is authorized to change the numbering and formatting this Ordinance to conform with the SeaTac Municipal Code codification in a manner that is consistent with the intent and language of this Ordinance.

**Section 5**. Severability. If any provision of this Ordinance is declared illegal, invalid or inoperative, in whole or in part, or as applied to any particular Hospitality or Transportation Employer and/or in any particular circumstance, by the final decision of any court of competent jurisdiction, then all portions and applications of this Ordinance not declared illegal, invalid or inoperative, shall remain in full force or effect to the maximum extent permissible under law.